797 F.2d 931
 UNITED STATES of America, Plaintiff-Appellee,
v.
Luis SAINSBURY-SUAREZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Luis R. SAINSBURY-SUAREZ, Pedro Cortes-Castro, Jairo
Sanchez-Ayala, Alvaro Escobar-Erazo, Freddie
Rodriguez and Justino Cordoba-Gueirero,
Defendants-Appellees.
In re UNITED STATES of America, Petitioner.
UNITED STATES of America, Plaintiff-Appellant,
v.
Jairo SANCHEZ-AYALA, Defendant-Appellant.
 Nos. 85-5002, 84-5545, 84-5546, 84-5883
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 25, 1986.
 
 Leon Kellner, U.S. Atty., David A. Doheny, David O. Leiwant, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for defendant-appellant.
 John D. Lazarus, Miami, Fla., for Ayala.
 Appeals from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.
 PER CURIAM:
 
 
 1
 These consolidated cases include appeals by two defendants from their convictions on drug trafficking charges, a related appeal by the government on an evidentiary question, and another government appeal from a district court order permitting defendants to be released from custody pending trial. We reverse the evidentiary ruling, affirm the convictions, and dismiss the remaining appeal as moot.
 
 I.
 
 2
 Defendant Sainsbury-Suarez was captain and defendant Sanchez-Ayala a crew member of the GLOBAL CHARTER, a converted shrimper of Panamanian registry. In December 1983, the Coast Guard observed the GLOBAL CHARTER in international waters between Cuba and Hispaniola. Coast Guard officer Webber requested and obtained permission from Sainsbury to board the vessel. A lengthy and detailed search, conducted with Sainsbury's permission, initially turned up no evidence of drugs.
 
 
 3
 Finally, after several hours, an examination of one of the GLOBAL CHARTER's fuel tanks indicated that there was about 1000 cubic feet of unaccounted-for space in the tank. Webber requested permission to drill a hole through the vessel's deck into the space, but Sainsbury turned down the request. The Coast Guard eventually received permission from the Panamanian government to conduct the search, but that permission did not come until twenty hours after Sainsbury had denied permission, nearly a day and a half after the Coast Guard's initial boarding. In the interim, the GLOBAL CHARTER apparently remained under the Coast Guard's control.
 
 
 4
 The search conducted pursuant to Panama's consent turned up some 15,000 pounds of marijuana, and defendants were indicted on drug smuggling charges. The district court, however, suppressed the evidence turned up by the search, reasoning that the 20-hour delay between Sainsbury's denial of permission and the granting of permission by Panama--during which, the court found, the GLOBAL CHARTER was not free to leave--constituted an unreasonable seizure of the vessel in violation of international law. The court rejected defendants' argument that the court lacked jurisdiction because the vessel was outside the "customs waters" of the United States.
 
 
 5
 The government took an appeal from the suppression ruling (No. 84-5545), and also appealed from a district court order directing release of the defendants pending trial (No. 84-5546). Faced with the possibility of lengthy pre-trial proceedings, defendants determined that it would be more advantageous to plead guilty to the charges on condition that the suppression and jurisdictional issues be preserved for appeal (Nos. 84-5883 and 85-5002).
 
 II.
 A.
 
 6
 Defendant Sainsbury argues that the United States lacks jurisdiction over the smuggling acts charged in his indictment. His argument is that the telephonic consent of Panama to the search was not an "agreement" sufficient to bring the waters surrounding the GLOBAL CHARTER within the "customs waters" of the United States. See 21 U.S.C. Secs. 955a(c), 955b(a); 19 U.S.C. Sec. 1401(j). This precise argument was rejected in United States v. Gonzalez, 776 F.2d 931 (11th Cir.1985). Sainsbury is free to pursue the argument with the en banc court, but at this stage Gonzalez is binding.
 
 B.
 
 7
 The district court suppressed the evidence seized from the GLOBAL CHARTER on the ground that it was obtained in violation of international law. This was error. Whether or not international law was violated, the crew of a foreign vessel has no standing to complain of such a violation. In addition, there is no exclusionary rule applicable to international law violations. See United States v. Williams, 617 F.2d 1063, 1090 (5th Cir.1980) (en banc).
 
 
 8
 If the evidence is to be excluded, it must be because of a fourth amendment violation. Defendants point to the twenty-hour delay in obtaining Panama's consent, arguing that the Coast Guard's maintenance of control over the GLOBAL CHARTER during this period was an unconstitutional seizure of the vessel.
 
 
 9
 Assuming for the sake of argument that there was an unconstitutional seizure, that would not require exclusion of the evidence obtained through the later search. The Supreme Court was faced with a similar situation in Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). In that case, drug enforcement agents had information of drug trafficking sufficient to sustain a search warrant for a particular apartment. Before a warrant was issued, however, the agents went to the apartment and conducted an illegal entry and "seizure" of the premises. Some 19 hours later, a warrant was finally issued based solely on information known to the agents before the illegal entry. The Supreme Court held that evidence obtained pursuant to the authorized search was admissible notwithstanding the illegal prior entry. The Court concluded that the illegal entry "did not contribute in any way to discovery of the evidence seized under the warrant." The defendants argued that had it not been for the illegal "seizure" they could have destroyed or removed the evidence, so that it would not have been discovered during the later valid search. The Court, however, rejected this contention as "pure speculation," further concluding that the argument that there is a "constitutional right" to destroy evidence "defies both logic and common sense." See id. at 814-16, 104 S.Ct. at 3392.
 
 
 10
 In this case, as in Segura, the evidence in question was turned up as the result of a search which standing alone would have been unquestionably valid. In addition, much like the search warrant in Segura the consent of Panama here was obtained solely on the basis of information obtained before the challenged seizure. Whether or not the twenty-hour delay was unconstitutional, it is clear that the delay did not taint the eventual consent of Panama or the resulting search. It is true that had the GLOBAL CHARTER left the area and dumped its illicit cargo somewhere, only later to be searched by the Coast Guard, the search would not have turned up any marijuana. That, however, cannot be enough to support exclusion of the evidence, for that is precisely the attenuated connection rejected by the Supreme Court in Segura.
 
 
 11
 It should be remembered that the twenty-hour delay at issue here was caused by the Coast Guard's attempt to obtain proper authorization for a search. Holding that the evidence here was properly suppressed would lead to the absurd result that the Coast Guard would be encouraged to conduct searches and seizures of vessels without first obtaining permission. Under United States v. Reeh, 780 F.2d 1541, 1547 (11th Cir.1986), the search of a vessel does not constitute a constitutional violation even if consent was not obtained before the search occurred, so long as consent is obtained at some point afterward. Thus, if the Coast Guard had first searched the vessel without permission and then held the vessel while awaiting Panama's after the fact consent, there would be no fourth amendment problem arising from the search so long as Panama did eventually consent. The only difference here is the sequence of events. In this case, that is a distinction without meaning.
 
 
 12
 Nos. 84-5883 and 85-5002, AFFIRMED.
 
 
 13
 No. 84-5545, REVERSED.
 
 
 14
 No. 84-5546, DISMISSED.