**STATE of Utah, Plaintiff and Respondent,**

v.

**Mark A. VanHolten, Daniel B. NORTH-RUP, and David Walsh, Defendants and Appellants.**

No. 860369–CA.

Court of Appeals of Utah.

May 26, 1988.

Rehearing Denied Aug. 17, 1988.

David Grindstaff (argued), Salt Lake City, for defendants and appellants.

David L. Wilkinson, State Atty. Gen., David B. Thompson (argued), Asst. Atty. Gen., for State.

Before DAVIDSON, GREENWOOD and JACKSON, JJ.

GREENWOOD, Judge:

Following a nonjury trial, Daniel B. Northrup was convicted of three counts: 1) offering, agreeing or arranging to distribute for value a controlled substance to wit: cocaine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (1986); 2) unlawful possession of a controlled substance with intent to distribute for value to wit: cocaine, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986); and 3) possession of a controlled substance to wit: mushrooms, a class A misdemeanor, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986).[1] Northrup appeals, contending that the warrantless entry into his residence violated his fourth amendment rights and all evidence seized after the entry should have been suppressed.

On February 14, 1985, two undercover police officers, Officer Belgarian and Officer Rickards, met with co-defendant, Mark A. VanHolten, to arrange the sale of cocaine. VanHolten drove the officers to a residence located at 4441 South 970 East in Salt Lake City, Utah. The officers gave VanHolten $130. VanHolten went into the residence and returned with a white powdery substance. On February 19, 1985, the officers went with VanHolten to the same residence and gave him $130. VanHolten entered the residence and again returned with a white powdery substance.[2]

On Friday, February 26, 1985, Officer Belgarian arranged to purchase cocaine from VanHolten. Officer Belgarian picked up VanHolten, drove him to the same residence and gave him $1,000 in evidence money.[3] At about noon, VanHolten took the money into the house and returned about ten minutes later with a substance that proved to be cocaine. Officer Belgarian drove VanHolten to a nearby parking lot where police surveillance units were waiting and arrested VanHolten. At the time of VanHolten's arrest, Officer Belgarian heard on the surveillance radio that a vehicle was leaving the residence. Police officers stopped the vehicle and searched the driver of the vehicle, Ronald Varney. Mr. Varney did not have the evidence mon-

1. Utah Code Ann. § 58–37–8(1)(a)(ii) and (iv) were not changed when section 58–37–8 was amended in 1984, 1985 and 1986.

2. The State did not establish at trial whether the white powdery substance purchased on February 14 and February 19 was cocaine. The State

dismissed two counts against Northrup pertaining to those transactions.

3. The police had a list of the serial numbers on the bills given to VanHolten.

ey but was arrested, taken into custody and detained until about 7:00 p.m. that night.

Because Mr. Varney did not have the evidence money, Officer Rickards and another officer, believing that the money might be destroyed, approached the residence and knocked on the door. Northrup answered the door, refused to allow the officers into the residence and closed the door. The officers forcibly entered the residence, conducted a protective sweep of the premises to determine who was present and secured the five occupants in the front room. According to the officers, the occupants were arrested and informed of their Miranda rights. The officers patted down each person and then took each person to his or her room for questioning. When Northrup was patted down, the officer conducting the pat-down testified that he felt something hard which he believed was a weapon. The officer pulled the object out of Northrup's pocket and discovered $2,061 folded in half. The money included all of the evidence money. After the pat-down search, Officer Belgarian and Officer Rickards escorted Northrup to his bedroom. The officers told Northrup if he cooperated with them, they would be nice to him. The officers testified that when they entered Northrup's room, they saw drugs and drug paraphernalia in plain view, including what proved to be cocaine and psilocybin mushrooms, and an open box containing drugs and drug paraphernalia. None of the evidence was confiscated at that time.

Approximately two and one-half hours after the officers entered the residence, a search warrant arrived and the officers seized various items of evidence including the box in Northrup's room and the other evidence in Northrup's room in plain view. The officers had not attempted to obtain a warrant prior to entry.

Prior to trial, Northrup moved to suppress the evidence seized after the entry into the residence. The court found that the entry into the home was proper and that the search of the home before the warrant arrived was illegal. The court ruled that all evidence seized in the pat-down and pursuant to the warrant was admissible but suppressed all evidence seized prior to the arrival of the warrant and not in plain view.

On appeal, Northrup claims that the trial court erred in ruling that: 1) the entry was proper; 2) the evidence seized pursuant to the warrant was admissible; 3) the evidence obtained during the search of Northrup's room was admissible; and 4) the evidence seized in the pat-down was admissible.

I

First, we examine whether the police officers' entry into the home prior to the arrival of the search warrant violated Northrup's rights under the fourth amendment of the United States Constitution.[4] "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting *United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed. 2d 752 (1972)). The warrant requirement of the fourth amendment, which is imposed on agents of the government who seek to enter a home for purposes of search or arrest, is the "principal protection against unnecessary intrusions into private dwellings." *Id.* Thus, the United States Supreme Court has recognized, as a basic principle, that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New*

**4.** Because the defendant in this case failed to argue this case under the Utah Constitution's prohibition against unreasonable searches and seizures, we confine our analysis to the protections granted under the fourth amendment to the United States Constitution. *See State v. Ashe*, 745 P.2d 1255, 1257 n. 2 (Utah 1987). The fourth amendment of the United States Constitution states that:

> The right of the people to be secure in their ... houses ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). "[O]nly in a 'few specifically and well-delineated' situations, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it." *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). The State has the burden of proving that "the exigencies of the situation made [the search] imperative." *State v. Ashe,* 745 P.2d 1255, 1258 (Utah 1987) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed. 2d 564 (1971)). One type of exigent circumstance identified by the Supreme Court is when preservation of the evidence might be endangered by the delay in obtaining a warrant. *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966).

The Utah Supreme Court, applying the fourth amendment of the federal constitution, recently upheld a trial court's finding that exigent circumstances justified a warrantless entry into a home. *Ashe,* 745 P.2d at 1255. In *Ashe,* a police officer met with co-defendant Glaser in a cafe and agreed to give Glaser $500 if she would return with one ounce of cocaine. If the cocaine was acceptable, the officer agreed to purchase a total of four ounces of cocaine. Glaser went to the cafe parking lot and spoke to co-defendant Cricks. Glaser returned to the cafe and instructed the officer to meet her in five minutes in a nearby parking lot. Police observed Cricks drive to Ashe's house twice and then Cricks met with Glaser. Glaser then took an envelope containing a white powdery substance to the officer. Glaser and Cricks were arrested. Glaser told police that her supplier was in the vicinity and expected the purchase of the remaining cocaine to occur quickly. Thus, the officers decided to secure Ashe's house and detain the occupants. Upon arriving at Ashe's house, an officer saw Ashe look out of an upstairs window and then move away. The officer then entered the house, heard a toilet flush and discovered Ashe in a bathroom fully dressed and standing away from the toilet. Two bags containing a white powdery substance were in the nearby wastebasket. Ashe was arrested.

In upholding the trial court's finding that exigent circumstances existed to justify the warrantless entry, the Court noted that Ashe might have been alarmed if Glaser and Cricks did not return to complete the transaction. That alarm "would likely lead to the speedy removal or destruction of contraband, as well as escape or retaliation against the officers." *Id.* at 1259. The Court also found that the urgency of the situation escalated when Ashe looked out of the window. In addition, the Court noted, the officers were unaware of Ashe's location or existence and were not in a position to secure a warrant. Under these circumstances, the Court found sufficient evidence in the record to support the trial court's finding that exigent circumstances existed.

▆ We will not disturb the trial court's factual assessment underlying a motion to suppress unless the trial court's assessment is against the clear weight of the evidence and we are left with a definite and firm conviction that a mistake has been made. *Id.* at 1258. In the present case, the officers had been to the residence and purchased a white powdery substance on two previous occasions. On the day of the warrantless search, surveillance units were located about a block from the residence. VanHolten went into the residence, returned to Officer Belgarian's car with the cocaine and Officer Belgarian drove him to the parking lot where the surveillance units were waiting. VanHolten was then arrested. Moments later, Mr. Varney left the residence and was stopped and searched for the money. Mr. Varney did not have the money but was arrested, taken into custody and detained until 7:00 p.m. that night. The officers then went to the residence, knocked on the door and forcibly entered the residence.

▆ Unlike *Ashe,* the officers in this case knew the exact location of the house where the cocaine would be purchased. They had previously purchased a white powdery substance from a supplier in the

residence on two occasions, and, on the day of the warrantless entry, had surveillance units positioned a short distance from the residence. In addition, the purchase occurred on a Friday around noon when courts are open and search warrants can be readily requested. At a minimum, officers could have obtained a telephone warrant pursuant to Utah Code Ann. § 77–23–4(2) (1982). Further, unlike *Ashe*, there was no known danger that the occupants of the residence would be alarmed if VanHolten did not return shortly. The transaction was completed. Therefore, exigent circumstances similar to those present in *Ashe* are not present in this case.

We also find that no other exigencies justified the warrantless entry. This case does not involve a situation where someone could have warned the occupants of the residence about the impending search. *See United States v. Rubin*, 474 F.2d 262 (3rd Cir.1973). The officers stopped Mr. Varney, but Mr. Varney could not call and alert the occupants of the house because he was in custody until 7:00 p.m. that night. Further, none of the other occupants of the residence had exited the residence. Therefore, the prosecution failed to demonstrate that preservation of evidence would be endangered if the officers were required to obtain a warrant. Consequently, we hold that no exigent circumstances existed which justified the warrantless entry into the residence.

## II

The next issue is whether the evidence seized pursuant to the warrant was admissible even though the initial entry was illegal. In addressing this issue, we must answer two distinct questions: whether the evidence seized pursuant to the warrant and not in plain view during the initial entry was admissible; and whether the evidence in plain view during the initial entry was admissible under the warrant. In *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the United States Supreme Court addressed whether evidence seized pursuant to a warrant and not in plain view during the initial entry should have been suppressed. The Court held:

> the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

*Id.* at 799.

In *Segura*, drug enforcement agents received information that Segura and Colon were trafficking cocaine from their apartment. Surveillance officers observed a meeting in which Segura and Colon gave a package to a third party. The third party was arrested and found to possess cocaine. He admitted having obtained it from Segura and Colon and informed them that Segura would be calling him later that night to possibly deliver additional cocaine. That evening Segura was arrested in the lobby of his apartment building. Police took him to his apartment, and, when Colon answered the door, police entered the apartment and conducted a security check to ensure no one else was there. Colon, Segura and the other occupants were arrested and taken to a police facility. Two agents remained in the apartment for nineteen hours until others returned with a search warrant. The search pursuant to the warrant revealed three pounds of cocaine, $50,000, narcotics records and ammunition. In reviewing the lower court's ruling, the United States Supreme Court stated, "The only issue here is whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed." *Id.* The Court affirmed the court of appeals' ruling that the evidence not in plain view during the initial entry and seized pursuant to the warrant was admissible, reasoning that no information

obtained during the initial entry or occupation of the apartment was needed or used by the agents to obtain the warrant. Therefore, the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence.[5]

█ Applying *Segura* to the facts of this case, we must analyze whether the evidence was seized pursuant to a valid search warrant which was based upon information independent of the illegal entry. In this case, however, Northrup's attorney stated during oral agrument that he did not challenge the warrant on appeal. In addition, the affidavit which served as the basis of the warrant is not part of the record on appeal. Absent a challenge to the warrant or any reliable evidence that the warrant was based upon independent information, we must assume the warrant was valid and based upon information independent of the illegal entry. Therefore, we uphold the trial court's ruling that evidence seized pursuant to the warrant was admissible.

A more difficult issue, not decided by the majority in *Segura,* is whether the evidence in plain view during the initial illegal entry was properly admitted. Justice Stevens, dissenting in *Segura,* noted that the majority's reasoning applies equally to the evidence uncovered pursuant to the warrant and evidence in plain view during the initial entry. Justice Stevens stated:

> The warrant provided an "independent" justification for seizing all the evidence in the apartment—that in plain view just as much as the items that were concealed. The "plain view" items were not actually removed from the apartment until the warrant was executed; thus there was no more interference with petitioners' possessory interest in those items than with their interest in the concealed

items. If the execution of a valid warrant takes the taint out of the hidden fruit, I should think that it would also remove the poison from the fruit in plain view.

*Id.* at 831 (footnote omitted).

In *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984), the Court held that evidence that would otherwise be inadmissible under the exclusionary rule was admissible if the evidence would inevitably have been discovered without reference to the police error or misconduct. In addition, as we have previously noted, the *Segura* Court held that evidence which would be subject to the exclusionary rule may be admissible if the police had an "independent source" for discovery of the evidence. Thus, under *Segura* and *Nix,* evidence which would otherwise be excluded may be admissible if the "inevitable discovery" or the "independent source" doctrine applies. We do not perceive any persuasive reason to treat plain view evidence differently. Our conclusion is consistent with *United States v. Moscatiello,* 771 F.2d 589, 603 (1st Cir.1985), and *United States v. Salgado,* 807 F.2d 603, 609 (7th Cir.1986), but differs from the approach taken in *United States v. Silvestri,* 787 F.2d 736 (1st Cir.1986). In *Moscatiello,* the First Circuit found that evidence in plain view during an illegal entry and later seized pursuant to a warrant was admissible. Similarly, the *Salgado* court ruled that "whether there is an interim illegal seizure of evidence is irrelevant to the issue of exclusion, provided there is ... very great confidence that the evidence would have been obtained for use at trial even if there had not been that seizure." *Salgado,* 807 F.2d at 609. However, in *Silvestri,* the First Circuit noted that evidence in plain view at the time of the initial

---

**5.** Most federal circuit courts agree that under *Segura,* evidence seized after illegal entry into a home should not be excluded as fruit of the poisonous tree if: 1) the evidence is seized pursuant to a valid search warrant; and 2) the warrant is based upon information from a source independent of the illegal entry. *United States v. Carrion,* 809 F.2d 1120, 1128–30 (5th Cir.1987); *United States v. Salgado,* 807 F.2d 603, 608 (7th Cir.1986); *United States v. Sains-*

*bury–Suarez,* 797 F.2d 931, 933 (11th Cir.1986); *United States v. Silvestri,* 787 F.2d 736, 746 (1st Cir.1986); *United States v. Crozier,* 777 F.2d 1376, 1380 (9th Cir.1985). There are, however, those who believe that the 5–4 *Segura* decision marks a disastrous, albeit confusing, erosion of fourth amendment protections. *See* Dressler, *A Lesson in Incaution, Overwork, and Fatigue: The Judicial Miscraftsmanship of Segura v. United States,* 26 Wm. & Mary L.Rev. 375 (1985).

illegal entry was seized when the police observed the evidence. Thus, the court reasoned, the evidence could not be legally seized pursuant to a warrant unless the police relinquished control of the illegally seized items prior to the arrival of the warrant.

We disagree with *Silvestri* that evidence is seized when police observe the evidence. The United States Supreme Court has stated that a seizure occurs when "there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). We believe that no meaningful interference with an individual's property interest occurs when an officer observes evidence in plain view without anything more. We conclude, therefore, that evidence which is in plain view during an illegal entry and later seized pursuant to a valid warrant based upon independent information, may be admissible under either the "independent source" or the "inevitable discovery" doctrine.

Analyzing the facts of this case in light of this conclusion, we find that the evidence in plain view during the initial illegal entry was properly seized pursuant to the warrant. The officers testified that the evidence was not disturbed or confiscated until the warrant arrived. Even though the officers saw the evidence, no meaningful interference with Northrup's property interest occurred until the evidence was confiscated after the arrival of the warrant. As we have previously stated, the warrant was not challenged on appeal, and we must assume that the warrant was based upon information independent of the illegal entry. Therefore, because the warrant provided an independent source for discovery of the evidence, we hold that the evidence in plain view during the initial illegal entry was admissible based upon the search warrant.

### III

Northrup also claims that the evidence seized pursuant to his consent should have been excluded because his consent was coerced. In this case, however, the evidence which Northrup allegedly consented to showing the officers was a box in plain view in Northrup's bedroom and was seized pursuant to the warrant. Because we have determined that that evidence in plain view was properly seized pursuant to the warrant, we need not address whether that evidence was admissible based on Northrup's consent.

### IV

We must next consider if the evidence seized in the pat-down was properly admitted. In examining this issue, we must again determine " 'whether granting establishment of the primary illegality, the evidence has been come at by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (quoting Maguire, *Evidence of Guilt*, 221 (1959)). Further, in addition to analyzing under the *Segura* "independent source" theory, we must determine if the evidence seized in the pat-down was admissible under the "inevitable discovery" doctrine which states that evidence is admissible if the evidence would inevitably have been discovered without reference to the police error or misconduct. *Nix*, 467 U.S. at 448, 104 S.Ct. at 2511. The "independent source" and the "inevitable discovery" doctrines are corresponding in that exclusion of the tainted evidence would "put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place." *Id.* at 444, 104 S.Ct. at 2509.

First, we address whether the evidence was admissible because it would have been discovered by an independent source, a valid search warrant. In *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979), the United States Supreme Court stated that "a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing

to the fact that coincidentally there exists probable cause ... to search the premises where the person may happen to be." *See also State v. Banks*, 720 P.2d 1380, 1383 (Utah 1986).

■ Although the officers in the instant case were entitled to search the premises after the arrival of the search warrant, the search warrant did not authorize a search of Northrup. The officers had no evidence independent of their illegal entry which would have authorized a search or arrest warrant naming Northrup. Although the officers believed that someone in the house may have been involved in the drug transaction, the officers did not know the identity of that person. Therefore, we find that because the warrant did not permit a search of Northrup and because the officers had no probable cause to believe that Northrup was the specific person involved in the drug transaction, the search warrant did not provide an independent source for discovery of the evidence seized in the pat-down search.[6]

Our next inquiry is whether the evidence seized in the pat-down was admissible under the "inevitable discovery" doctrine. In *Nix*, evidence consisting of the corpse and effects of a murder victim were allowed into evidence although improperly obtained from the defendant's confession in violation of his sixth amendment rights. The Court noted that prior to the confession an exhaustive search effort had been organized and commenced which would clearly have resulted in discovery of the evidence. *Nix*, 467 U.S. at 442–46, 104 S.Ct. at 2508–10. In this case, however, the record contains no evidence which convinces us that the money seized in the pat-down would have "inevitably" been discovered without the illegal police entry. Police did not know Northrup's identity prior to their entry and, therefore, had no probable cause to justify his arrest without a warrant under Utah Code Ann. § 77-7-2 (1987).[7] Absent sufficient particularized evidence of "inevitable discovery," we cannot speculate on unknown possibilities.

■ The evidence money was not seized pursuant to independent information, nor would it have been "inevitably discovered." It was obtained solely by exploitation of the illegal entry. Therefore, it should have been excluded as "fruits" of the illegal entry.[8]

■ Although we have determined that the pat-down evidence was erroneously admitted, we must also consider whether the error was reversible error. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Utah R.Evid. 103. A substantial right of a party is affected if, viewing the evidence as a whole, there is a reasonable likelihood a different result would have been reached absent the error. *State v. Speer*, 750 P.2d 186, 189 (Utah 1988).

---

**6.** The State does not contend that the evidence seized in the pat-down was admissible if the initial entry was illegal. Instead the State claims that if the entry was illegal, the pat-down evidence was appropriately seized under the rationale in part IV of *Segura*. However, because only two justices concurred in part IV of *Segura*, it is not binding on this Court and we will not apply its reasoning.

**7.** A police officer may arrest an individual without a warrant "when he has reasonable cause to believe a felony has been committed and has reasonable cause to believe the person arrested has committed it; [or] (3) when he has reasonable cause to believe the person has committed a public offense, and there is reasonable cause for believing the person may ... destroy or conceal evidence of the commission of the offense...."

**8.** Similarly, we do not believe that the seizure can be legitimized by a "stop and frisk" theory under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the officers were illegally on the premises and may not benefit by "exploitation of that illegality." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417. We agree with Justice Harlan's concurrence in *Terry* which stated that "if the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop." *Terry*, 392 U.S. at 32, 88 S.Ct. at 1885 (emphasis in original). *See also* 3 W. La-Fave, *Search and Seizure*, § 9.4(a) at 499 (1987) (stating that Justice "Harlan's basic point is eminently sound"). In this case, the officers were illegally on the premises and consequently did not have constitutional grounds to insist on an encounter with Northrup.

At the close of the trial in this case, the trial judge stated:

> we have evidence that ... the cocaine was found in his residence, and although that's not a lot of cocaine, Mr. Grindstaff, I think when you find the scales, the sifters, the papers cut, even though the amount is small, I think it's an indication that he was dealing in it. Then on top of that, you add the fact that he ends up with the buy money. Had it not been for the buy money and the other things you said, you just found that much cocaine on him, I think I might have agreed with you [that there was insufficient evidence of distribution to other people].

▮ Based on the foregoing language from the trial court, we find that there is a reasonable likelihood that, absent the evidence money, the judge may not have found Northrup guilty of the two counts involving the distribution of cocaine: offering, agreeing or arranging to distribute for value a controlled substance; and unlawful distribution for value of a controlled substance. Therefore, the trial court's failure to exclude the evidence seized in the patdown was reversible error requiring this Court to reverse and remand on those two counts. The conviction on the third count, possession of a controlled substance to wit: mushrooms, is affirmed.

Affirmed in part and reversed and remanded in part.

JACKSON and DAVIDSON, JJ., concur.