**STATE of Utah, Plaintiff and Appellee,**

v.

**Devon Boyd POTTER, Defendant and Appellant.**

**No. 920579–CA.**

Court of Appeals of Utah.

Sept. 8, 1993.

Jan Graham and J. Kevin Murphy, Salt Lake City, for defendant and appellant.

Mark T. Ethington, Murray, for plaintiff and appellee.

Before BENCH, GREENWOOD and RUSSON, JJ.

## OPINION

RUSSON, Associate Presiding Judge:

The State of Utah appeals the trial court's order granting Devon Boyd Potter's motion to suppress evidence of possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1993), and possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5 (1990). We affirm.

## FACTS

At about 10:30 p.m. on February 15, 1991, Leon Sandstrom left Devon Boyd Potter's trailer home in Huntington, Utah, and shortly thereafter, was stopped by Gayle Jensen, an Emery County sheriff's deputy, who suspected that he was driving under the influence. Deputy Jensen requested that Sandstrom exit his vehicle for field sobriety testing, at which time Sandstrom volunteered information that Jim Ward, a known drug user, and seven others were smoking marijuana inside Potter's home, and asked if giving this information to the deputy would "help him" regarding his likely DUI charge.

Deputy Jensen summoned Tom Harrison, an Emery County narcotics detective, and relayed to him the information given by Sandstrom. Detective Harrison spoke with Sandstrom, who repeated his account of the activities at Potter's home and further claimed that the individuals present in the trailer home had "about three fingers" of marijuana. Detective Harrison directed Deputy Jensen and other officers to watch Potter's home, while he obtained a search warrant. While watching Potter's home, and completing Sandstrom's arrest and vehicle impoundment, the officers observed individuals peering out of the trailer's window several times. The officers relayed their observations to Detective Harrison, who directed them to enter Potter's home and secure it, pending arrival of the search warrant.

Upon entering the trailer, the officers found Potter, Jim Ward and one other individual watching television. The officers did not observe anyone smoking marijuana, nor did they detect the odor of marijuana in the air. Shortly after the initial entry, Detective Harrison arrived at the home and explained to the occupants that the trailer was being secured until a search warrant could be processed.

Detective Harrison returned to the sheriff's office to complete the application for a search warrant. Detective Harrison based his warrant affidavit upon: (1) the fact that Potter was the subject of an ongoing drug investigation; (2) the presence of Jim Ward, a known drug user, at Potter's trailer home; (3) informant Sandstrom's claim that Ward and seven others were smoking marijuana inside Potter's home; and (4) police officers' observation that the occupants of the trailer repeatedly peered out of the window at the officers and appeared nervous. Detective Harrison completed the application and affidavit, and took them to Magistrate Stan Truman for review and signature. However, Detective Harrison did not tell the magistrate that police observations of the circumstances inside the Potter home did not coincide with Sandstrom's accusations. The magistrate signed the warrant.

Prior to searching Potter's trailer, Detective Harrison advised Potter to cooperate with the officers, and Potter surrendered approximately one-eighth of an ounce of marijuana. A further search of the trailer produced a set of scales and other drug paraphernalia. Potter was subsequently charged with possession of a controlled substance, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1993), and possession of drug paraphernalia, in violation of

Utah Code Ann. § 58–37a–5 (1990). Potter filed a motion to suppress, claiming that all the evidence was seized in violation of his rights under the Fourth Amendment to the United States Constitution. The said motion was granted.

The State filed this interlocutory appeal, asserting that the trial court erred in: (1) determining that the search warrant was invalid; and (2) failing to address the State's "good faith reliance" argument, made pursuant to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[1]

## STANDARD OF REVIEW

■ We review the factual findings underlying a grant of a motion to suppress evidence under a "clearly erroneous" standard, and review the trial court's conclusions of law based thereon for correctness. *State v. Brown,* 853 P.2d 851, 854–55 (Utah 1992) (citing *State v. Ramirez,* 817 P.2d

1. The State also argues that the trial court erroneously found that exigent circumstances justifying pre-warrant entry of Potter's home did not exist. However, whether such exigent circumstances existed is not determinative of the outcome of this case. This court has previously held that even though initial police entry into a home is illegal, a subsequent valid search warrant renders the evidence seized pursuant to that warrant admissible. *State v. Northrup,* 756 P.2d 1288, 1292–94 (Utah App.1988). Since the outcome of the case at bar therefore turns on the validity of the warrant obtained herein, we do not address the State's exigent circumstances argument on appeal.

2. *See, e.g., State v. McIntire,* 768 P.2d 970, 972 (Utah App.1989) ("Whether the description in a search warrant is adequate depends upon the particular circumstances. The description is sufficient if the officer executing the search warrant can with reasonable effort ascertain and identify the place to be searched." (citations omitted)); *accord State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985). In the present case, since the officers knew the correct location of Potter's trailer, having already secured it pending the arrival of the search warrant, the search warrant was not void for lack of particularity.

3. *See, e.g., State v. Bryan,* 709 P.2d 257, 260 (Utah 1985) ("On appeal, this Court may affirm the trial court's decision on any proper grounds, even though the trial court assigned another reason for its ruling."); *accord State v. Hansen,*

774, 781–82 (Utah 1991)); *accord State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993).

## SEARCH WARRANT

■ The State argues that the trial court erred in granting Potter's motion to suppress, assailing the court's determination that "[t]he Search Warrant was defective in that it did not 'particularly' describe the place to be searched." Potter responds that the trial court correctly determined that the search warrant was invalid due to its lack of particularity. He further asserts that even if the search warrant is sufficiently particular, he should nonetheless prevail on the motion because the affidavit submitted by Detective Harrison in support of his request for a search warrant was insufficient to establish probable cause. While we agree with the State that the search warrant was not void for lack of particularity,[2] since we may affirm on any proper ground,[3] we address Potter's claim that Detective Harrison's affidavit was insufficient to establish probable cause.[4]

837 P.2d 987, 988 (Utah App.1992); *State v. Droneburg,* 781 P.2d 1303, 1305 (Utah App. 1989).

4. Although we agree with the dissent that, as a general rule, appellate courts should "be very careful not to usurp the authority and responsibility of our trial courts," because this court, like the trial court, is bound by the contents of the affidavit, we need not defer to the trial court's determination of the sufficiency of the affidavit, but instead make an independent review of that determination. *State v. Weaver,* 817 P.2d 830, 833 (Utah App.1991); *see also State v. Purser,* 828 P.2d 515, 517 (Utah App. 1992) (holding that we review the magistrate's, not the trial court's, actions); *accord State v. Babbell,* 770 P.2d 987, 991–92 (Utah 1989); *State v. Collard,* 810 P.2d 884, 886–87 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991).

Moreover, this approach is particularly appropriate in the present case, where one of two outcomes would result from the remand proposed by the dissent. Either the trial court would grant Potter's motion, holding that Detective Harrison's affidavit was insufficient to establish probable cause, or the case would proceed to a trial in which the said evidence would be admitted. The first scenario would undoubtedly result in a second interlocutory appeal by the State on the very issue we decide today; the second would result in an appeal by Potter, arguing that the evidence should have been suppressed for the very reasons we conclude it

**956**

■ It is well settled that "[b]efore issuing a search warrant, a neutral magistrate must review an affidavit containing specific facts sufficient to support a finding of probable cause." *State v. Purser,* 828 P.2d 515, 517 (Utah App.1992) (citing *State v. Babbell,* 770 P.2d 987, 990 (Utah 1989)). In determining whether probable cause exists, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■ On appeal, we do not conduct a de novo review of the magistrate's probable cause determination, *State v. Collard,* 810 P.2d 884, 885 (Utah App.) (citations omitted), *cert. denied,* 817 P.2d 327 (Utah 1991), but only "determine whether the issuing magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *Id.* (citing *Babbell,* 770 P.2d at 991). Moreover, we must consider the affidavit "in its entirety." *State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985).

In the case at bar, the evidence submitted by Detective Harrison in his affidavit in support of his request for a search warrant included: (1) the fact that Potter was the subject of an ongoing drug investigation; (2) the presence of Jim Ward, a known drug user, at the Potter home; (3) informant Sandstrom's claim that Ward and seven others were smoking marijuana inside Potter's trailer home; and (4) police officers' observation that the occupants of the trailer repeatedly peered out of the window at the officers and appeared nervous.

■ Because a probable cause determination focuses on the probability that evidence of a crime will currently be found in a particular place, *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, the first two of the above

should. In either case, judicial economy is not

grounds are not properly part of that determination. First, the fact that Potter was under investigation for drug distribution does not indicate that controlled substances will currently be found in his trailer. *See State v. Brooks,* 849 P.2d 640, 644 (Utah App.) (holding that information that defendant had been a target of investigations by local drug agencies during the past several years does not indicate that controlled substances will currently be found at his residence), *cert. denied,* 860 P.2d 943 (Utah 1993). Second, the presence of Jim Ward, a convicted drug user, does not establish that controlled substances would presently be found in the Potter trailer. *See id.* (holding that an individual's criminal record does not establish that he is currently dealing in controlled substances).

Thus, we examine the remaining two grounds, Sandstrom's information and the nervous peering out of the window, to determine if such grounds are sufficient to establish that "the issuing magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *Id.* (quoting *Collard,* 810 P.2d at 885). As to the use of information provided by informants, we have previously stated:

In some cases, the circumstances may require the supporting affidavit to set forth in detail the basis of knowledge, veracity and reliability of a person supplying information in order to establish probable cause. In other cases, if circumstances as a whole demonstrate the truthfulness of the informant's report, a less strong showing is required. For example, reliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information. Courts have also consistently approved the issuance of search warrants where the informant's knowledge is based on personal observation. Further buttressing reliability is the detail with which an informant describes the facts set forth in the affidavit and independent corroboration of the significant facts by the police.

served by remand.

*State v. Purser*, 828 P.2d at 517 (citations omitted).

■ In the case at bar, because circumstances as a whole did not plainly demonstrate the truthfulness of Sandstrom's allegations, his basis of knowledge, veracity and reliability needs to be demonstrated in order to establish probable cause. *See id.* The basis of Sandstrom's knowledge is proper since it was allegedly based on personal observation. Sandstrom told Detective Harrison that he had just left Potter's trailer and was driving around specifically because he did not want to be present while the individuals inside the trailer smoked marijuana. Furthermore, Sandstrom claimed to know that the occupants of the trailer possessed a baggie containing "about three fingers" of marijuana, and named Potter and Ward as two of the occupants.

However, the basis of Sandstrom's veracity and reliability is suspect since the information he provided was not corroborated by, and was in fact directly contradicted by, other evidence available to the officers. First, Sandstrom volunteered the information only after being pulled over for drunk driving, and for the sole purpose of getting a break in the almost certain DUI charge against him. Such circumstances remove this case from the ambit of those cases in which a citizen receives nothing from the police in exchange for the information, and seriously calls into question Sandstrom's reliability and veracity.

Moreover, the fact that the officers entered Potter's trailer to secure it and found no evidence corroborating Sandstrom's allegations weighs heavily against the inclusion of those allegations in Detective Harrison's warrant affidavit. Upon entering the trailer, the police detected no visual signs of marijuana, no lingering odor, and none of the occupants appeared to be under the influence of illegal substances. Furthermore, there were only three people present, not the eight people that Sandstrom claimed were there. At that point, Detective Harrison should have discredited Sandstrom's allegations and not included them in his warrant affidavit because he had

observed that they were not only unsubstantiated, but contradicted by the officers' observations of Potter's trailer. Thus, the information given to Detective Harrison by Sandstrom, which further investigation had revealed to be false, must be set aside, and the determination of whether probable cause for the search warrant exists must be made without the inclusion of such information. *See State v. Brown*, 798 P.2d 284, 288 (Utah App.1990) ("[W]here a defendant establishes by a preponderance of the evidence that the affiant made a false statement, intentionally, knowingly, or with reckless disregard for the truth, the false material must be set to one side and probable cause determined by the affidavit's remaining content." (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978))).

■ Setting aside the information provided by Sandstrom that proved to be false, the only remaining ground upon which to find probable cause for the issuance of a search warrant is the observation made by officers that the occupants of Potter's trailer repeatedly peered out of the window and appeared nervous. We have previously held that an "officer's mere conclusion regarding defendant's nervousness, unsupported by relevant objective facts, can have no weight in determining if he had a reasonable suspicion of criminal activity." *State v. Sery*, 758 P.2d 935, 945 (Utah App.1988); *accord State v. Mendoza*, 748 P.2d 181, 184 (Utah 1987); *State v. Robinson*, 797 P.2d 431, 436 (Utah App. 1990). Because nervous behavior alone is insufficient to establish a reasonable suspicion of criminal activity, it follows that it is clearly insufficient to establish probable cause. Accordingly, we hold that the grounds given in support of Detective Harrison's application for a search warrant were insufficient to support probable cause, and the magistrate had an insufficient basis to conclude otherwise. *See generally Brooks*, 849 P.2d at 644; *Collard*, 810 P.2d at 885. Thus, the trial court did not err in concluding that the search warrant was invalid.

## *LEON* EXCEPTION

The State claims that even if the search warrant is unsupported by probable cause, the evidence seized during the search is admissible under the "good faith reliance" exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Potter responds that since the officers failed to act in an objectively reasonable manner, *Leon* is inapplicable to the case at bar. We agree.

In *Leon*, the United States Supreme Court held that since the exclusionary rule is aimed at deterring unlawful police conduct, evidence obtained by officers acting in good faith reliance on a defective warrant is admissible. *Id.*, 468 U.S. at 920–23, 104 S.Ct. at 3419–20; *accord State v. Rowe*, 806 P.2d 730, 737 (Utah App.1991), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992). However, in order for the exception in *Leon* to apply, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420 (citation omitted). "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Id.*, 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted).

Such is the situation in the case at bar. As noted above, Detective Harrison misled the magistrate by including in the warrant affidavit information that he "knew was false or would have known was false except for his reckless disregard for the truth." *Id.* Specifically, Detective Harrison included in the warrant affidavit Sandstrom's allegations that there were eight persons inside the Potter residence using marijuana, despite the fact that officers found absolutely no evidence of such behavior when they entered the trailer to secure it. Thus, the State's "good faith reliance" argument fails, and therefore, the

trial court did not err in not addressing the State's *Leon* argument.

## CONCLUSION

On the basis of the foregoing, we conclude that the trial court properly granted Potter's motion to suppress all evidence obtained as a result of the illegal search in this matter. Accordingly, we affirm.

GREENWOOD, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent from the decision to affirm the trial court's suppression order in this interlocutory appeal on grounds the trial court has not yet ruled upon.

In his suppression motion, defendant alleged that the evidence must be suppressed for several reasons: (a) there were no exigent circumstances that justified the officers' entry into his home prior to the issuance of the warrant; (b) the warrant was not supported by probable cause; (c) the warrant affidavit contained recklessly false statements; and (d) the warrant did not satisfy the "particularity" requirement in its description of the premises to be searched. The State addressed each one of the defendant's allegations and also argued that the evidence should not be suppressed because the officers acted in an objectively reasonable manner in reliance on the search warrant. *See State v. Leon*, 468 U.S. 897, 918–19, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984).

In granting defendant's motion, the trial court ruled only on issues (a) and (d). First, the court ruled that "[e]xigent circumstances did not exist to justify the officer's [sic] warrantless entry of defendant's home." Second, the court ruled that "[t]he search warrant was defective in that it did not 'particularly' describe the place to be searched." The court did not address any of defendant's other allegations, nor the State's allegation that the officers acted in an objectively reasonable manner in reliance on the search warrant.

This court granted the State's petition for interlocutory appeal under Rule 5 of

the Utah Rules of Appellate Procedure. The main opinion correctly holds that the trial court's suppression of the evidence was erroneous in that (1) the evidence obtained pursuant to a valid search warrant cannot be suppressed even if the initial entry into the home is not justified under an exigent circumstances analysis, *see* main opinion note 1; and (2) the warrant in the present case was not void for lack of particularity, *see* main opinion note 2. That should end our analysis in this interlocutory appeal. The case should be remanded for whatever further proceedings may be appropriate in the trial court.

However, the main opinion goes on to affirm the trial court's suppression order based on grounds never considered by the trial court. *See* main opinion at 955–956 & n. 3 ("[S]ince we may affirm on any proper ground, we address Potter's claim that Detective Harrison's affidavit was insufficient to establish probable cause."). While this is an appropriate position to take with a final appealable order from the trial court, *see State v. Bryan*, 709 P.2d 257, 260 (Utah 1985), I believe it is an improper position to take with regard to an interlocutory appeal.

An interlocutory appeal is designed to review an intermediate order of the trial court upon which further proceedings in the trial court hinge. *See, e.g., Manwill v. Oyler*, 11 Utah 2d 433, 435, 361 P.2d 177, 178 (1961) (interlocutory appeal is proper "if it appears essential to adjudicate principles of law or procedure in advance as a necessary foundation upon which the trial court may proceed"); *Osteen v. Seaboard Coast Line R. Co.*, 283 So.2d 379, 381 (Fla. App.1973) (review by interlocutory appeal is an accelerated procedure designed to resolve an issue in question and then return the case to the trial court for further proceedings); Black's Law Dictionary 815 (6th ed. 1990) (Interlocutory appeal is "[a]n appeal of a matter which is not determinable of the controversy, but which is necessary for a suitable adjudication of the merits."). By definition, therefore, an interlocutory appeal contemplates further proceedings in the trial court once the appellate court decides the intermediate issue on appeal. Where, by definition, the trial court remains an active participant in the proceedings and has yet to address an issue, we should limit our ruling to the issues raised in the interlocutory order.

In this case, we should reverse the order of the trial court and remand the case for further proceedings. The trial court should have the first opportunity to rule on questions such as probable cause. *See State v. White*, 851 P.2d 1195, 1198 (Utah App.1993) (our review focuses on whether it was permissible for the trial court to find that the magistrate had probable cause to issue the warrant).[1] Likewise, the trial court must decide, in the first instance, the

---

1. By deciding issues the trial court has not addressed, the main opinion has neglected to recognize the very important role played by the trial court in reviewing the decision of the magistrate. In *White*, 851 P.2d at 1198, we discussed the standard of review for each step in the process of reviewing a search warrant:

When a search warrant is challenged on the basis of lacking probable cause for issuance, "the fourth amendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination." *Babbell*, 770 P.2d at 991; *accord* [*State v.*] *Stromberg*, 783 P.2d [54] at 57 [Utah App. 1989]. Instead, the reviewing court is required to give great deference to the magistrate's determination, and "will find the warrant invalid only if the magistrate, given the totality of the circumstances, lacked a 'substantial basis' for determining that probable cause existed." *State v. Thurman*, 203 Utah Adv.Rep. 18, 19 [846 P.2d 1256, 1260] (Utah

1993) (quoting *Babbell*, 770 P.2d at 991); *accord State v. Hansen*, 732 P.2d 127, 129 (Utah 1987); *State v. Leonard*, 825 P.2d 664, 673 (Utah App.1992). The trial court examines the affidavit "in its entirety and in a common-sense fashion." *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985).

Our review of the trial court's determination focuses on whether it was permissible for the trial court to find that the magistrate had probable cause to issue the warrant under the *Gates* test. We do not conduct our own de novo review of the magistrate's decision. *State v. Miller*, 740 P.2d 1363, 1366 (Utah App.), *cert. denied*, 765 P.2d 1277 (1987) (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331). We defer to the trial court's finding that the magistrate acted properly. *Stromberg*, 783 P.2d at 57.

Because of our limited role in reviewing probable cause, we should refrain from addressing the issue where the trial court has never addressed it.

question of whether the officers acted in an objectively reasonable manner in reliance on the search warrant. At the very least, the trial court should be invited to determine factually if the officer knew that information he supplied in the affidavit was false, or whether he "would have known [it] was false except for his reckless disregard of the truth." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421.

After we have decided the narrow issue presented in an interlocutory appeal, we should allow the case to proceed in the trial court. "To the extent an appellate court supersedes the trial court in the decision of factual issues and the application of law to fact, it undermines the authority of the tribunals through which the legal system speaks directly to those who invoke the legal process for resolution of their controversies." Section 3.11, American Bar Association, *Standards Relating to Appellate Courts, 1977 Edition.* We must be very careful not to usurp the authority and responsibility of our trial courts.

Due to the intermediate and limited nature of this appeal, I would reverse the suppression order and remand the case for further proceedings in the trial court.