STATE of Utah, Plaintiff and Appellee,

v.

Son T. NGUYEN, Defendant and Appellant.

No. 930156–CA.

Court of Appeals of Utah.

July 21, 1994.

Steven B. Killpack, Provo, for appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for appellee.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Son T. Nguyen, appeals his conviction of receiving stolen property, a third degree felony, in violation of Utah Code Ann. § 76–6–408 (1990). Defendant argues on appeal that law enforcement officials did not have reasonable suspicion to stop his vehicle and lacked probable cause to conduct a warrantless search of his vehicle. Further, defendant argues that the State did not establish a corpus delicti. We affirm.

## FACTS

On October 10, 1992, Louise Roybal, a clerk at a 7–Eleven store in Price, Utah, observed seven Asian individuals playing video games in the store. After purchasing some merchandise, the individuals finished playing the video games and left the store in pairs. On October 12, 1992, Barbara Jean Robinette, the manager of the same 7–Eleven store, discovered that the lock on a video machine in the store had been cut and the machine's coin box emptied. Officer Tracy Lynn Allred of the Price City Police Department investigated the incident and verified that the lock to one of the video machines at the 7–Eleven store was cut, the circuit board was missing, the coin box was empty, and the machine had pry marks on it.

On October 27, 1992, Maxine Barker, the owner/manager of the Skyview Cafe in Spanish Fork, Utah, observed a cream-colored Datsun or Toyota automobile containing at least four Asian individuals pull into the parking lot of her cafe. One of the individuals entered the restaurant and offered to sell her up to 300 rolls of quarters. Barker agreed to buy two rolls. The individual went to his car and returned with quarters wrapped in yellow notebook paper which he sold to Barker. Barker obtained the license plate number of the car as it drove away. She then called the police and reported suspicious persons trying to sell large amounts of coins.

Shannon Horn, a dispatcher for the Utah County Sheriff's Office, broadcast an "ATL" (Attempt to Locate) based on the information provided by Barker stating that male individ-

uals in a cream or tan colored compact car with a specified license plate number were traveling down Spanish Fork Canyon attempting to sell quarters wrapped in yellow notebook paper. Horn and other dispatchers called other businesses in Spanish Fork Canyon as well as the Carbon County dispatcher who indicated that a theft of quarters from vending machines had recently occurred in Price. According to Horn, proprietors of three other businesses in the canyon reported that individuals had attempted to sell them quarters as well. Horn ran a check on the license plate number and found it registered to a person with a Vietnamese name, whose license was suspended. Dispatch also broadcast and relayed the additional information regarding the other attempts to sell quarters, the Price burglary, and the identity of the car's registered owner to the highway patrol. Horn testified that all of this information had been broadcast before the stop of the vehicle occurred. Penny Turner, a Utah Department of Public Safety dispatcher, also broadcast the ATL and the additional information to highway patrol officers before the stop of the vehicle occurred.

Utah Highway Patrol Trooper Dennis Shields heard the ATL and information that the vehicle had been spotted traveling northbound just west of American Fork. Shields located and stopped the vehicle and a dispatcher informed him that Price City Police wanted to talk to the individuals in the car about thefts in the area. Shields then approached the car and informed the driver (later identified as defendant) that he had stopped him because of reports that the car's occupants had attempted to exchange large amounts of quarters at local businesses. Shields asked defendant if he had large amounts of quarters wrapped in yellow paper. Defendant responded, "No." Shields then asked defendant if he had recently been to Price. Defendant stated that he and his companions were returning from Denver and had not been to Price. Shields then requested that defendant and the other passengers exit the car and asked defendant who owned the vehicle. Defendant, unable to tell Shields the name of the owner, simply stated that a friend owned it. At this point, Deputy David Hill of the Utah County Sheriff's Of-

fice arrived. Hill took defendant to his vehicle, advised him of the purpose of the stop, and read him his *Miranda* rights. He then asked defendant questions relating to the coins and the ownership of the car. Defendant again stated that there were no quarters in the car, but this time indicated that the owner of the vehicle was a friend named "Bo."

During this time other officers, including Shields, searched the vehicle. The officers found a duffel bag containing a vice grip and a large amount of quarters, both loose and wrapped in yellow paper, totaling $2096.75. A subsequent search of the car at the American Fork Police Station produced a yellow legal pad of paper, bolt cutters, and screwdrivers.

Deputy Scott Carter, of the Utah County Sheriff's Office, met with defendant at the American Fork Police Station. Other officers told Carter that defendant had been advised of his *Miranda* rights and Carter confirmed that defendant was aware of those rights. Defendant told Carter that he and his companions had been in Colorado and had stolen quarters from video machines in 7–Eleven stores in Colorado Springs and two other unspecified locations. Two days later, on October 29, 1992, defendant was again apprised of his *Miranda* rights. He then signed a handwritten statement indicating that the quarters found in the car had been stolen from four 7–Eleven stores in Colorado. Defendant denied that he had burglarized the 7–Eleven store in Price.

At the beginning of trial, defendant moved to suppress the evidence seized from the search of the car he was driving. After a bench trial, the trial court denied the motion to suppress and convicted defendant of receiving stolen property.

## STANDARD OF REVIEW

A trial court's determination of reasonable suspicion is a determination of law and is reviewed for correctness. Thus, we accord no particular deference to the trial court's determination. *State v. Pena*, 869 P.2d 932, 939 (Utah 1994). However, the reasonable suspicion legal standard is one

"that conveys a measure of discretion to the trial judge" to apply that standard to a particular set of facts. *Id.* A sufficiently careful review of the court's determination is required to assure that the purpose of the reasonable suspicion requirement is served. *Id.*

■ The standard of review in examining the trial court's determination of probable cause is the same as articulated above for reasonable suspicion. *State v. Poole*, 871 P.2d 531, 533 (Utah 1994). Thus, we review a determination of probable cause for correctness conveying some discretion to the trial judge to apply the standard to the particular set of facts in the case. *Id.*

■ We have found no Utah case which specifically sets forth the standard for reviewing a trial court's determination of whether the corpus delicti has been established in order to admit a defendant's confession.[1] We believe that such a determination is similar to a trial court's ruling on the admission of evidence. As such, the determination of whether the corpus delicti rule has been satisfied is a question of law, and we give no deference to the trial court's ruling, but review it under a correctness standard. *See State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991). However, the trial court's underlying findings of fact regarding the corpus delicti will be overturned only if clearly erroneous. *Id.* at 782 n. 3.

## ANALYSIS

### Reasonable Suspicion for the Stop

■ Defendant argues that the trial court erred in determining that law enforcement officials had reasonable suspicion to justify the stop of his vehicle. We disagree.

■ The test for determining whether a reasonable suspicion exists in order to justify an investigative stop is that "where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot" a brief stop and detention is justified. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *accord* Utah Code Ann. § 77-7-15 (1990). In other words, reasonable suspicion exists if the officer has " 'a reasonable suspicion based on objective facts, that the individual is involved in criminal activity.' " *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991) (quoting *State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985)). In determining the existence of reasonable suspicion, a court must look to the totality of the circumstances. *Id.*

■ Defendant asserts that the information the State presented as a basis for the stop—that Asian males were attempting to sell quarters to various businesses and that a burglary had occurred in Price—was insufficient to establish reasonable suspicion. Further, defendant argues that there was no basis for the stop because selling quarters is not illegal.

However, the conduct observed and/or information relied upon need not be illegal or describe illegal activity in order to give a law enforcement officer reasonable suspicion of criminal activity, so long as the officer can articulate facts which form the basis for his or her suspicion. *State v. Menke*, 787 P.2d 537, 541 (Utah App.1990). Rather, the conduct observed must suggest to an officer, in light of that officer's experience, that criminal activity may be afoot. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884; *Menke*, 787 P.2d at 541.

In this case, the law enforcement officials possessed enough information to satisfy the standard for reasonable suspicion. The ATL relayed the following information to law enforcement officers: (1) the color and possible make of the car driven by the suspects, (2) an accurate license plate number, (3) the race and gender of the suspects and the direction the vehicle was heading, (4) details of the suspects' conduct attempting to sell large amounts of quarters wrapped in yellow note-

---

1. We note that in *State v. Johnson*, 821 P.2d 1150 (Utah 1991), the Utah Supreme Court held that the trial court's ruling that the corpus delicti rule did not apply to bar certain statements made by defendant is a question of law and would be reviewed for correctness. *Id.* at 1161. However-

er, the question presented in this case is somewhat different. The trial court's determination at issue here focused on whether the State had established evidence which satisfied the corpus delicti rule rather than the applicability of the rule itself.

book paper, (5) several business operators' reports of concerns about their encounters with the suspects, and (6) the report of a recent burglary in Price. Such information could reasonably lead an officer to conclude, based on the totality of the circumstances, that criminal activity may be afoot. We therefore hold that the trial court did not err in determining that law enforcement officials had reasonable suspicion justifying the stop of defendant's vehicle.

### Warrantless Search of the Vehicle

■ Defendant next asserts that the trial court erred by finding that officers on the scene had probable cause to conduct a warrantless search of the vehicle. We disagree with this contention as well.

■ A warrantless search of an automobile by a peace officer is justified if there is " 'probable cause to believe that the automobile contains either contraband or evidence of a crime and that they may be lost if not immediately seized.' " *State v. Droneburg,* 781 P.2d 1303, 1305 (Utah App.1989) (quoting *State v. Christensen,* 676 P.2d 408, 411 (Utah 1984)); *see also State v. Limb,* 581 P.2d 142, 144 (Utah 1978) (noting that probable cause and exigent circumstances must exist to justify warrantless search of automobile). Probable cause means a "fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Because defendant does not challenge the existence of exigent circumstances,[2] the issue is narrowed to the existence of probable cause.

Defendant asserts that the officers did not have probable cause to conduct the warrantless search of the automobile because the search was based solely on the reported theft in Price. Such a report did not, defendant argues, allow the officers to stop and search all persons having quantities of quarters in their possession.

■ We disagree with defendant's characterization of the facts. In our view, there were additional facts known to the officers supporting probable cause. First, when Officer Shields asked defendant if there were any of the described quarters in the car, defendant answered, "No." Defendant's answer was obviously false given the reports provided by four businesses detailing the suspects' attempts to exchange quarters wrapped in yellow notebook paper and describing both the car driven by defendant and its occupants. Defendant's response served to validate the original suspicion leading to the stop. Second, the coins described above were the same type as described in the Price burglary. Third, when Officer Shields asked defendant who owned the vehicle, he stated that a "friend" owned it. However, defendant did not produce the name of that "friend." Defendant's false and evasive answers, the reports of defendant's suspicious behavior, and the similarity of the coins to those taken in the Price burglary provided probable cause to believe that the automobile contained contraband or evidence of a crime. In *State v. Menke,* 787 P.2d 537 (Utah App. 1990), this court found that a suspect's "false or evasive" answers to police questions in conjunction with highly suspicious behavior may be used to establish probable cause. *Id.* at 542. Thus, "responses by the suspect which the officer knows to be false, or which are implausible, conflicting, evasive or unresponsive may well constitute probable cause when considered together with the prior suspicions." 2 Wayne R. LaFave, *Search and Seizure* § 3.6(f), at 65–66 (1987) (footnotes omitted); *see also United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975) (stating that suspect's response to police inquiries may be considered in evaluating probable cause).

As a result, we conclude that the trial court correctly determined that under the totality of the circumstances the officers had

---

**2.** The trial court found that exigent circumstances existed because "the potential evidence was in an automobile traveling away from the

suspected crime and the best information available indicated that the occupants were in the

probable cause to conduct a warrantless search of the vehicle.[3]

### Independent Evidence of a Corpus Delicti

 Defendant's final contention is that the trial court erred in admitting his confession because there was no evidence of a corpus delicti. We find that the State produced sufficient independent evidence of a corpus delicti.

 The corpus delicti rule provides that a confession may be introduced as evidence against a defendant only if the State proves by clear and convincing independent evidence that a crime occurred. *State v. Johnson,* 821 P.2d 1150, 1162–63 (Utah 1991); *State v. Weldon,* 6 Utah 2d 372, 373, 314 P.2d 353, 354 (1957); *State v. Hansen,* 857 P.2d 978, 980 (Utah App.1993). To satisfy this rule, the State must show that "(1) a wrong was done, and (2) such wrong was the result of criminal conduct." *Johnson,* 821 P.2d at 1164. However, the evidence need not connect the defendant to the crime, it need only establish that a crime was committed. *Id.* at 1162; *State v. Knoefler,* 563 P.2d 175, 176 n. 2 (Utah 1977) (quoting Charles T. McCormick, *Evidence* § 158 (2d ed. 1972); *Hansen,* 857 P.2d at 980. Further, the evidence presented may be either circumstantial or direct. *Provo City Corp. v. Spotts,* 861 P.2d 437, 441 (Utah App.1993).

Defendant argues that there was no independent evidence of a corpus delicti. He asserts that although there was evidence of a crime in Price, there was no evidence, even by his own statements, that connected him to the crime.

However, as discussed above, evidence of a corpus delicti need not connect the defendant with the crime charged. Such evidence need only establish that a crime was committed.

In this case, the State produced evidence of the Price burglary that established that a wrong was committed and that it was the result of criminal conduct. Further, defendant's confession of criminal conduct was strikingly similar to the conduct involved in the Price burglary. Finally, over $2000 in quarters was found in the car defendant was driving, along with tools such as bolt cutters, vice grips, and screwdrivers. This evidence, when taken together, establishes a corpus delicti. Therefore, the trial court did not err in finding that the State produced sufficient evidence of a corpus delicti.

## CONCLUSION

Based upon the evidence presented at trial, we conclude that law enforcement officials had reasonable suspicion to stop defendant's vehicle. Further, officers on the scene had probable cause to conduct a warrantless search of the vehicle. Finally, the State produced sufficient independent evidence of a corpus delicti to allow introduction of defendant's confession.

We therefore affirm defendant's conviction of receiving stolen property.

BILLINGS and DAVIS, JJ., concur.

---

midst of actively disposing of potential evidence."

**3.** Defendant also claims that the scope and length of his detention was unreasonable. Defendant cites numerous cases in which the court found that a detention went beyond the scope and proper duration of the initial stop for a traffic violation. However, this case involved a stop based on an ATL, which involves more than a routine traffic violation. In light of the facts contained in the ATL and known by officers on the scene, coupled with defendant's false and evasive answers to the officers' questions, the officers had an "articulable suspicion" that the defendant had committed a crime. *State v. Hargraves,* 806 P.2d 228, 232 (Utah App.1991) (quoting *State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987)). Thus, the length and scope of the detention was "necessary to effectuate the purpose of the stop," and the trial court did not err in so concluding. *Id.* (quoting *Deitman,* 739 P.2d at 617).