**STATE of Utah, Plaintiff and Appellee,**

v.

**James J. CONTREL, Defendant and Appellant.**

**No. 930588–CA.**

Court of Appeals of Utah.

Dec. 1, 1994.

---

G. Fred Metos and Stephen R. McCaughey, Salt Lake City, for appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for appellee.

Before DAVIS, JACKSON and GREENWOOD, JJ.

DAVIS, Judge:

Defendant James J. Contrel appeals from a conditional guilty plea to unlawful possession of a controlled substance, in violation of Utah Code Ann. § 58-37-8(2)(a)(i) (1994), a third degree felony. On appeal, defendant challenges the trial court's conclusion that the officers' stop was legal, and that article I, section 14 of the Utah Constitution does not require a knowing consent. We affirm.

## FACTS

At approximately 2:00 p.m. on February 4, 1992, while Sergeant Paul Mangelson and Trooper Lance Bushnell were patrolling I-15 within Juab County, Sergeant Mangelson saw a pickup truck and made the following observations: the vehicle was a late model Chevrolet pickup truck; the heavy-duty chrome metal bumper had been bent upward; the gas tank was lower than that of a stock model truck; the truck had been recently undercoated; unlike stock model pickup trucks, the vehicle had no air space between the truck bed and the frame; and the vehicle had heavy duty shock absorbers, a bed liner, and a tool box in the bed area. Sergeant Mangelson noted that the vehicle was identical in every respect, except for its color, to a vehicle he had seized several months earlier containing a secret compartment behind the bumper in which Sergeant Mangelson discovered large quantities of contraband.

Based upon Sergeant Mangelson's observations and his prior experience,[1] the officers

1. The trial court found that Sergeant Mangelson has had extensive training in drug law enforce-

stopped the vehicle. Defendant, the driver of the vehicle, produced a Florida driver's license and a Pennsylvania registration and told the officers that the vehicle belonged to a friend. In response to Sergeant Mangelson's inquiry, defendant denied the presence of drugs or contraband in the vehicle. Sergeant Mangelson then asked defendant for his consent to search the vehicle, which defendant gave both orally and in writing. Sergeant Mangelson went to the rear of the vehicle, accessed the secret compartment exactly as he had done with the vehicle he had seized several months earlier and discovered over 100 pounds of marijuana. Defendant was thereafter arrested and charged by information with possession of a controlled substance in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1994), a second degree felony.[2]

Defendant moved to suppress the evidence obtained at the time of his arrest, claiming that there was an insufficient basis to stop the vehicle and that article I, section 14 of the Utah Constitution requires a knowing consent. This motion was denied. Defendant then entered a conditional guilty plea, specifically preserving his right to appeal the ruling on the motion to suppress. On appeal, defendant argues that the denial of his motion to suppress must be reversed because: (1) mere alterations to a vehicle consistent with a hidden compartment fail to establish a reasonable suspicion that defendant was involved in the commission of a crime; (2) in order to have a valid consent, article I, section 14 of the Utah Constitution requires an enforcement officer to inform an individual of his or her right to refuse consent to search; and (3) any consent given to search the vehicle lacked attenuation from the initial illegal stop, making the evidence seized inadmissible.

## ANALYSIS

### I. Reasonable Suspicion

■ Defendant argues that there was no articulable, reasonable suspicion for Sergeant Mangelson to stop defendant's vehicle. "[A] trial court['s] determination of whether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness...." *State v. Pena,* 869 P.2d 932, 939 (Utah 1994). Even so, "the reasonable-suspicion legal standard is one that conveys a measure of discretion to the trial judge when applying that standard to a given set of facts." *Id.* Thus, de novo review is not warranted. *Id.*

The law in Utah parallels its federal counterpart, delineating three distinct levels of police intrusion:

(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (quoting *United States v. Merritt,* 736 F.2d 223, 230 (5th Cir.1984), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696 (1986) (citation omitted)); *State v. Bean,* 869 P.2d 984, 986 (Utah App.1994) (citations omitted). The parties do not dispute that the intrusion in this case was a level two seizure.

■ The level two intrusion is codified in Utah Code Ann. § 77–7–15 (1990). Section 77–7–15 provides that "[a] peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an expla-

---

ment and identification and has been involved in numerous cases involving hidden compartments containing contraband. Moreover, Sergeant Mangelson testified that he has performed approximately seven other investigatory stops involving pickup trucks with a hidden compartment.

**2.** Defendant ultimately pled guilty to a reduced charge of a third degree felony.

nation of his actions." *Id.* If a police officer observes conduct that raises a suspicion that a crime has been or is being committed, " 'he [or she] has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law.' " *State v. Menke,* 787 P.2d 537, 540 (Utah App.1990) (quoting *State v. Whittenback,* 621 P.2d 103, 105 (Utah 1980)). Notwithstanding this duty, the officer must heed the constitutional protections afforded our citizens. Section 77–7–15 contemplates that an officer may complete a non-consensual investigative stop and stay within the boundaries drawn by the constitution if the officer is able to point to objective, specific, and articulable facts which warrant the intrusion upon the person. *Id.* at 541 (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)); *see also State v. Roth,* 827 P.2d 255, 257 (Utah App.1992); *State v. Baumgaertel,* 762 P.2d 2, 3–4 (Utah App.1988). In articulating the facts upon which the officers base their suspicions, " 'the officer is entitled to assess the facts in light of his experience.' " *Menke,* 787 P.2d at 541 (quotation omitted); *Baumgaertel,* 762 P.2d at 4.

"While the required level of [reasonable] suspicion is lower than the standard required for probable cause to arrest, the same totality of facts and circumstances approach is used to determine if there are sufficient 'specific and articulable facts' to support reasonable suspicion." *State v. Case,* 884 P.2d 1274, 1276 (Utah App.1994) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). Thus, even though "the legal standards and consequences of probable cause and reasonable suspicion are distinct," *State v. Poole,* 871 P.2d 531, 533 (Utah 1994), and *Poole* was a probable cause case, we believe the *Poole* analysis controls the outcome of this case. In *Poole,* the Utah Supreme Court upheld the trial court's finding that the totality of the circumstances "gave rise to probable cause for a search." *Id.* at 534. Considered together, the following factors were sufficient

to support a finding of probable cause to search:

> First and foremost, the truck had a significant and unusual alteration in its bed which was in plain view and which *concealed* a secret compartment. Second, this truck was traveling a known drug trafficking route. Third, the compartment was discovered by an officer with twenty-four years of experience in the field who had seen other false beds that contained contraband. Fourth, one of the vehicle's passengers held a large wad of money. Fifth, both defendants appeared extremely nervous during the stop. Sixth, the cab of the truck contained a wrench with a socket that matched the bolt securing the secret compartment.

*Id.* (footnote omitted).

■ In this case, Sergeant Mangelson articulated objective facts upon which his suspicions were based, including an apparent, substantial structural modification of the pickup truck, in order to create and conceal a hidden compartment. Specifically, Sergeant Mangelson observed (1) the edge of the rear bumper on defendant's truck had been bent up at a 45 degree angle; (2) the gas tank was much lower than one on a stock model truck; (3) the truck had been recently undercoated; (4) unlike stock models, there was no air space between the truck bed and the frame; and (5) the truck had oversized, nonstock shock absorbers. Further, these alterations made the truck identical in almost every respect to a vehicle seized by Sergeant Mangelson only a few months earlier which had a virtually identical hidden compartment containing contraband. The fact of the hidden compartment coupled with Sergeant Mangelson's extensive experience and the location of the offense provides three out of the six factors enumerated in *Poole.* Because several of the factors present in this case were present in *Poole,* and because the standard for reasonable suspicion is lower than the standard for probable cause, we find no abuse of discretion by the trial court in applying the articulable facts in the case at bar to the reasonable suspicion legal standard and concluding that defendant was involved in criminal activity.[3]

---

3. As applied to the existence of reasonable suspi- cion within the meaning of Utah Code Ann.

## II. Knowing Consent

 Defendant requests that this court interpret article I, section 14 of the Utah Constitution as requiring an enforcement officer to advise an individual of his or her right to refuse consent to search. Defendant claims that he was not informed of his right to refuse consent, and that such failure voids the consent given. The trial court concluded that the Utah Constitution does not require a knowing consent. Whether the trial court erred in this conclusion is a question of law which we review for correctness, according no deference to the trial court's determination. *Utah Dep't of Envtl. Quality v. Wind River Petroleum*, 881 P.2d 869, 872 (Utah 1994) (citations omitted).

In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court expressly rejected the proposition that the Fourth Amendment requires an enforcement officer to inform a person of his or her right to refuse consent to search. *Id.* at 248, 93 S.Ct. at 2058. This interpretation of the Fourth Amendment has been continuously applied in Utah. *See State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980); *State v. Keitz*, 856 P.2d 685, 691 (Utah App.1993); *State v. Carter*, 812 P.2d 460, 468 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992); *State v. Grovier*, 808 P.2d 133, 137 (Utah App.1991); *State v. Robinson*, 797 P.2d 431, 437 (Utah App.1990). Defendant asks us to hold that the Utah Constitution provides broader protection than the Fourth Amendment by requiring a knowing consent. Defendant claims that "[t]he general purpose of such a requirement is to protect citizens from overreaching by law enforcement agents who may use very subtle, yet coercive means to obtain a consent to search."

The Utah Supreme Court has determined that, because article I, section 14 of the Utah Constitution is essentially identical to the Fourth Amendment,[4] no distinctions need be drawn "between the protections afforded by the respective constitutional provisions. Rather, the Court has always considered the protections afforded to be one and the same." *State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988). Notwithstanding,

> we have by no means ruled out the possibility of doing so in some future case. Indeed, choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts.

*Id.* at 1221 n. 8.[5]

Even though *Watts* authorizes departures from Fourth Amendment interpretations, the Utah Supreme Court has declined to do so with respect to the need for a knowing consent. In *Whittenback*, the defendant challenged the propriety of the search of his person and his vehicle under both the Fourth Amendment and article I, section 14. *Whit-*

§ 77–7–15 (1990) and authorities cited, our decision is based upon the unique facts and circumstances of this case; we refuse to adopt a per se rule which would create a mechanical application, authorizing an officer to stop a vehicle *any time* a hidden compartment exists.

4. The Fourth Amendment reads:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 U.S. Const. amend. IV.
 Article I, section 14 of the Utah Constitution has only minor differences:
 The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.
 Utah Const. art. I, § 14.

5. The Utah Supreme Court has chosen to deviate from the protections afforded by the Fourth Amendment in only a few instances which are unrelated to the case at hand. *See, e.g., State v. Thompson*, 810 P.2d 415 (Utah 1991) (article I, section 14 of Utah Constitution provides bank customers right of privacy in bank records, while Fourth Amendment does not); *State v. Larocco*, 794 P.2d 460 (Utah 1990) (article I, section 14 provides privacy interest in automobile interior, while Fourth Amendment law is unclear on the issue).

**112**

*tenback,* 621 P.2d at 105 & n. 5. He claimed that, although he had consented to the search, the consent was not voluntary. The court in *Whittenback* stated that while the prosecution had the burden of proving that the consent was voluntary, that burden did not include proving "that defendant knew of his right to refuse consent in order to show voluntariness." *Id.* at 106. Thus, in addition to adhering to Fourth Amendment interpretations, Utah case law relegates actual knowledge of Fourth Amendment and article I, section 14 rights to a factor in analyzing voluntariness, and we decline defendant's invitation to depart from the current status of the law.[6]

## CONCLUSION

Under the narrow facts in this case, we affirm the trial court's ruling that Sergeant Mangelson had reasonable suspicion to believe that defendant was committing a crime.[7] Further, we decline to interpret article I, section 14 of the Utah Constitution as requiring a knowing consent. Affirmed.

GREENWOOD and JACKSON, JJ., concur.

---

**6.** We note, with interest and concern, that the civil law affords our citizens greater protection from an unknowing waiver of a contractual or economic right than the criminal law from an unknowing waiver of a constitutional right. *See Soter's v. Deseret Fed. Sav. & Loan,* 857 P.2d 935,

942 (Utah 1993) (waiver of contractual right must be knowing).

**7.** Based on our holding that the stop was legal, we need not reach the attenuation issue raised by defendant.