**STATE of Utah, Plaintiff and Appellee,**

v.

**Nelson RODRIGUEZ–LOPI, Defendant and Appellant.**

**No. 960665–CA.**

Court of Appeals of Utah.

March 3, 1998.

Catherine L. Begic and Ralph W. Dellapiana, Salt Lake City, for Defendant and Appellant.

Jan Graham and Marian Decker, Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge.

Defendant Nelson Rodriguez–Lopi appeals his conviction for possession of a controlled substance (cocaine), a third degree felony in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1996). We affirm.

## BACKGROUND

At 5:00 a.m. on May 20, 1996, defendant and a passenger were traveling in the northbound outside lane of State Street in Salt Lake City, Utah. At about 1500 South, defendant pulled his vehicle out of the normal traffic lane and drove near the curb in an area often used for parking. Proceeding at about ten miles per hour, defendant leaned into the passenger area of the vehicle and conversed with two women through the passenger window. Several car lengths behind defendant, Salt Lake City Police Officers Schow and Farris saw defendant's unusual driving maneuver. The officers also recognized the two women as prostitutes. Officer Schow turned on the patrol car's overhead lights to stop the vehicle. Instead of stopping, defendant continued driving for about one block. During that time, the officers saw defendant and his passenger "frantically" trying to hide something under the seat.

Once stopped, the officers asked defendant to step out of the vehicle. As defendant exited, the officers saw an open bottle of beer in the middle of the floorboard. Shortly thereafter, Officer Findlay arrived to help in the investigatory stop. While two officers watched defendant and the passenger, Officer Farris removed a loaded firearm that protruded from under the driver's seat. When Officer Farris notified the other officers of the gun's presence, Officer Findlay told defendant to put his hands up. Defendant ignored the command. Consequently, Officer Findlay took defendant to the ground and handcuffed him. At that point, Officer Findlay saw a baggie filled with a white powdery substance sticking out of defendant's shirt pocket. Officer Findlay asked, "So what's this?" Defendant replied, "Cocanini" which, we are told, is Spanish for cocaine.

At the preliminary hearing, an officer testified of his training and experience in identifying controlled substances and that the substance found on defendant had a consistency similar to cocaine. The magistrate also allowed defendant's statement identifying the substance as "cocanini," and a toxicology report identifying the substance as cocaine. After the officer testified that he booked the substance into evidence, he further testified that a state crime lab employee took the substance from the evidence room and delivered it to the state crime lab. Defendant objected to the toxicology report as inadmissible hearsay. The magistrate overruled defendant's objection and allowed the report based on a 1994 amendment to the Utah Constitution. See Utah Const. art. I, § 12.

At a later hearing in district court, defendant sought to quash the bindover by arguing that the magistrate erroneously admitted

the toxicology report into evidence. Defendant also filed motions to suppress defendant's statement identifying the cocaine, to suppress evidence due to lack of reasonable suspicion to stop, and to suppress evidence due to illegal searches of defendant and his automobile. In denying the motion to quash the bindover, the court found that the officers stopped defendant based on an observed traffic violation and, further, that the officers had a reasonable suspicion that defendant committed a public offense. The court also ruled that the toxicology report was properly admitted at the preliminary hearing because the 1994 amendment to the Utah Constitution allows consideration of reliable hearsay at preliminary examinations. *See id.* The court also denied the motions to suppress evidence. Finally, the court granted the motion to suppress defendant's statement because defendant made the statement after the officer placed him in custody and before being informed of his right to remain silent.

After the court ruled, defendant entered a conditional plea of guilty for possession of a controlled substance. *See State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988) (holding conditional plea valid when court and prosecutor accept agreed-upon condition). Defendant appeals on two grounds: (1) the officers did not have a reasonable suspicion to make the stop; and (2) the magistrate should not have bound defendant over to the district court because the toxicology report was inadmissible hearsay.

## ANALYSIS

### Reasonable Suspicion

 Defendant argues that the officers had no reasonable suspicion to stop his vehicle. We review a trial court's determination of reasonable suspicion for correctness. *See State v. Contrel,* 886 P.2d 107, 109 (Utah Ct.App.1994). However, "the reasonable-suspicion legal standard is one that conveys a measure of discretion to the trial judge when applying that standard to a given set of facts." *State v. Pena,* 869 P.2d 932, 939 (Utah 1994).

 Regarding a brief investigatory stop, "[t]he United States Supreme Court has held that 'stopping an automobile and detaining its occupants constitute[s] a sei-

zure' within the meaning of the Fourth Amendment." *State v. Lopez,* 873 P.2d 1127, 1131 (Utah 1994) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). However, the Constitution does not forbid all searches and seizures; it forbids only "unreasonable searches and seizures." U.S. Const. amend. IV; *see also Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). Therefore, "[t]o determine whether a search or seizure is constitutionally reasonable, we make a dual inquiry: (1) Was the police officer's action 'justified at its inception'? and (2) Was the resulting detention 'reasonably related in scope to the circumstances that justified the interference in the first place?'" *Lopez,* 873 P.2d at 1131–32 (quoting *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879). We also "look to the totality of the circumstances present at the time of the stop to determine if there was an objective basis for suspecting criminal activity." *State v. Humphrey,* 937 P.2d 137, 141 (Utah Ct.App.1997).

 Utah Code Ann. § 77–7–15 (1995) codifies the grounds under *Terry* upon which a peace officer may stop and question a suspect: "A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions." Thus, when "a police officer observes conduct that raises a suspicion that a crime has been committed, '"he [or she] has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law."'" *Contrel,* 886 P.2d at 110 (quoting *State v. Menke,* 787 P.2d 537, 540 (Utah Ct.App.1990) (quoting *State v. Whittenback,* 621 P.2d 103, 105 (Utah 1980))).

 Here, the police officers saw defendant driving outside the normal traffic lane in an area routinely used for parking. While driving, defendant leaned over to the passenger window and spoke with two known prostitutes. The trial court determined that a sufficient number of suspicious circumstances occurred that, taken in their totality, justified

an investigatory stop. *See Humphrey*, 937 P.2d at 143 ("[R]eviewing all the factors collectively, the court concluded that [the officer's] articulated suspicion was reasonable."). We agree. The officers described "unusual conduct" that would lead a reasonable person to conclude "that criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. We therefore hold that the officers were justified in initiating the stop.

Defendant did not argue the second prong of the reasonable suspicion test. Consequently, we will not analyze whether the detention resulting from the stop was reasonably related in scope to the circumstances that justified it in the first place. *See Lopez*, 873 P.2d at 1132.

### Toxicology Report

■ Next, defendant argues that the magistrate should not have allowed the toxicology report at the preliminary hearing, and that without the report, the magistrate lacked sufficient evidence to bind defendant over. The decision to bind a defendant over for trial presents a question of law which we review for correctness. *See State v. Humphrey*, 823 P.2d 464, 465 (Utah 1991).

At a preliminary hearing, "[if] from the evidence a magistrate finds probable cause to believe the crime charged has been committed and that the defendant has committed it, the magistrate shall order, in writing, that the defendant be bound over to answer in the district court." Utah R.Crim. P. 7(h)(2). " 'The prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact.' " *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (quoting *State v. Anderson*, 612 P.2d 778, 783 (Utah 1980)).

■ In this case, the magistrate determined that the State presented sufficient evidence to bind defendant over to the district court. The magistrate based that conclusion on the following evidence: (1) a toxicology report identified the substance found on defendant as cocaine; (2) the officer testified that the substance found on defendant had a consistency similar to cocaine; and (3) defendant identified the substance as cocaine.

Defendant argues that the magistrate should not have allowed the toxicology report because it was inadmissible hearsay. At the preliminary hearing, the magistrate admitted the toxicology report after incomplete foundation testimony was offered and in view of a 1994 amendment to the Utah Constitution. *See* Utah Const. art. I, § 12 ("Nothing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination to determine probable cause . . . ."); *see also* Paul G. Cassell, *Balancing the Scales of Justice: The Case For and the Effects of Utah's Victim's Rights Amendment*, 1994 Utah L.Rev. 1373, 1423–56. We need not opine whether the toxicology report offered at the preliminary hearing was "reliable hearsay," as required by the constitution, because the magistrate otherwise had " 'a quantum of evidence sufficient to warrant submission of the case to the trier of fact.' " *Pledger*, 896 P.2d at 1229 (quoting *Anderson*, 612 P.2d at 783).

■ In this case, the officer testified of his years of experience and training in drug interdiction and described the white powdery substance found on defendant as being consistent with cocaine. The magistrate also admitted defendant's own statement identifying the substance as cocaine. Although the district court ultimately suppressed defendant's statement, the magistrate properly allowed it at the preliminary hearing. " 'A preliminary hearing is not a trial, and a magistrate . . . does not sit as a judge of a court and exercises none of the powers of a judge.' " *Humphrey*, 823 P.2d at 467 (quoting *Van Dam v. Morris*, 571 P.2d 1325, 1327 (Utah 1977)). Therefore, "[o]bjections to evidence on the ground that it was acquired by unlawful means are not properly raised at the preliminary examination." Utah R.Crim. P. 7(h)(2). Consequently, the magistrate properly allowed defendant's identification of the cocaine at the preliminary examination. Based on the officer's testimony and defendant's own statement, we conclude that the magistrate had a sufficient quantum of evidence to bind defendant over to the district court.

## CONCLUSION

We conclude that the officers articulated a reasonable suspicion for stopping defendant's vehicle. Further, the State presented sufficient evidence at the preliminary examination to bind defendant over to the district court.

We therefore affirm.

ORME, J., concurs.

DAVIS, Presiding Judge, concurring:

I concur with the result reached by the majority but write separately to express my view that we should reach the issue of whether the toxicology report was inadmissible hearsay in the context of the preliminary examination. As a result of our decisions and those of the supreme court limiting the gatekeeping function of a committing magistrate,[1] this issue is likely to recur yet evade review.[2] Thus, we should address this issue in order to assist magistrates in discharging their duties during preliminary examinations and to help guide trial courts in their review of such proceedings, recognizing that further elaboration may be necessary as specific situations are presented for our review. *See, e.g., In re Worthen,* 926 P.2d 853, 867 (Utah 1996).

Rule 7(h)(2) of the Utah Rules of Criminal Procedure provides that in the preliminary examination, "[t]he findings of probable cause may be based on hearsay in whole or in part." However, as clarified in the 1994 amendment to article I, section 12 of the Utah Constitution, such hearsay evidence must be *reliable. See* Utah Const. art. I, § 12 (emphasis added) ("Nothing in this constitution shall preclude the use of reliable hearsay evidence as defined by statute or rule in whole or in part at any preliminary examination. . . ."). Thereafter, the Utah Rules of Evidence were amended to provide, "In a preliminary examination, nothing in these rules shall be construed to prevent the admission of reliable hearsay evidence."

Utah R. Evid. 1101(b)(5). "Hearsay is reliable, and hence admissible, when it falls under one of the exceptions to the hearsay rules." *State ex rel. W.S.,* 939 P.2d 196, 200 (Utah Ct.App.1997); *see also State v. Lovell,* 758 P.2d 909, 913–14 (Utah 1988) (stating "testimony of an unavailable witness is presumed to be reliable when it clearly falls within an exception to the hearsay rule"). Rule 7(h)(1) of the Utah Rules of Criminal Procedure provides, "A preliminary examination shall be held under the rules and laws applicable to criminal cases *tried* before a court." (Emphasis added.) Thus, although hearsay is admissible in the preliminary examination to establish probable cause, it must be reliable. Accordingly, reliability may be established if the hearsay falls within an exception to the hearsay rule or upon a "showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

In this case, the State laid virtually no foundation for the admissibility of the toxicology report, nor did it show the applicability of an exception to the hearsay rule or any more general guarantee of trustworthiness. For example, the State failed to provide a chain of custody, what procedures were used in testing the substance, who tested the substance, testimony regarding the reliability of the scientific test result, who generated the report, testimony of the custodian of the report, any of the foundational requirements of the business records exception of Rule 803(6) of the Utah Rules of Evidence, or any other bases for admission or indicia of reliability. Foundational requirements, whether necessarily related to hearsay exceptions or not, almost invariably go to reliability and the ability of the opponent to test reliability. The ability to use reliable hearsay at the preliminary examination does not eliminate the requirement of a proper foundation for

---

1. *Cf. State v. Hutchings,* 950 P.2d 425, 434 (Utah Ct.App.1997) (" 'In making a determination as to probable cause, the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution.' "(quoting *State v. Pledger,* 896 P.2d 1226, 1229 (Utah 1995))); *State v. Jaeger,* 896 P.2d 42, 45 (Utah Ct.App.1995) (stating that "the magistrate . . . erred . . . by deciding questions

arising from credible, but conflicting evidence—questions that must be left to the fact-finder at trial").

2. The situation is somewhat analogous to a determination of whether to reach a moot issue. *See Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989); *Wickham v. Fisher,* 629 P.2d 896, 899 (Utah 1981).

the admission of any evidence. Thus, I would hold that because the State failed to lay a proper foundation, the magistrate erred in admitting the toxicology report at the preliminary hearing. *Cf. State v. Anderson,* 612 P.2d 778, 783–84 (Utah 1980) ("The fundamental purpose served by the preliminary examination is the ferreting out of groundless and improvident prosecutions.")

Nonetheless, given the light burden currently placed upon the State in preliminary examinations, the majority opinion correctly determined that the State adduced sufficient evidence at the preliminary hearing to bind defendant over, even if the toxicology report is not considered.