2001 UT App 329

**STATE of Utah, Plaintiff and Appellee,**

v.

**Marty Joe GALVAN, Defendant and Appellant.**

**No. 20001096–CA.**

Court of Appeals of Utah.

Nov. 8, 2001.

Stephen W. Howard, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Anne A. Cameron, District Attorney's Office, Salt Lake City, for Appellee.

Before JACKSON, Associate·P.J., and BENCH, and BILLINGS, JJ.

## OPINION

BILLINGS, Judge.

¶ 1 Defendant Marty J. Galvan appeals from a denial of a motion to suppress evidence obtained as a result of a traffic stop. Defendant was subsequently convicted of driving under·the influence of alcohol, a class B misdemeanor, in violation of Utah Code Ann. § 41–6–44 (Supp.1999). We reverse.

## BACKGROUND

¶ 2 On October 22, 1999, close to midnight, Trooper Scott Stephenson (Trooper) was patrolling in the area of 800 South and 300 West in Salt Lake City. While traveling westbound on 800 South, Trooper observed Defendant's vehicle heading eastbound and thought Defendant might be speeding. Trooper made a U-turn to follow Defendant's vehicle. As Defendant's car passed under a light, Trooper saw a "sparkle" in the windshield. He initiated a stop based on this observation.

¶ 3 After Defendant stopped, Trooper approached Defendant's vehicle and detected the odor of alcohol coming from inside the vehicle. He also observed a crack of about 24 inches in Defendant's windshield. Trooper then administered field sobriety tests. He arrested Defendant after Defendant refused a breathalyzer test. Defendant was charged with one count of driving under the influence of alcohol, in violation of Utah Code Ann. § 41–6–44 (Supp.1999); one count of transporting an open container, in violation of Utah Code Ann. § 41–6–44.20 (1998); and one count of faulty equipment, in violation of Utah Code Ann. §§ 41–6–117 or –155 (1998).

¶ 4 Prior to trial, Defendant filed a motion to suppress all evidence seized pursuant to the stop of his vehicle. Following a hearing on the motion to suppress, the trial court denied the motion. On the day of the trial, the State moved to dismiss the faulty equipment charge, which was granted. Following presentation of the State's case on the other charges, the Defendant moved for directed verdict as to the open container charge, which the court granted. The jury returned a verdict of guilty on the remaining count of driving under the influence of alcohol. Defendant now appeals the trial court's denial of his motion to suppress.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Defendant argues the stop was illegal from its inception because a sparkle in a windshield alone does not create reasonable suspicion of a violation of the law. Accordingly, Defendant argues the trial court erred by denying his motion to suppress. " 'We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard.' " *State v. Kohl*, 2000 UT 35, ¶ 9, 999 P.2d 7 (quoting *State v. Pena*, 869 P.2d 932, 939 n. 4 (Utah 1994)). A trial court's determination of reasonable suspicion is reviewed for correctness. *See State v. Rodriguez–Lopi*, 954 P.2d 1290, 1292 (Utah Ct.App.1998) (citing *State v. Contrel*, 886 P.2d 107, 109 (Utah Ct.App.1994)). "However, 'the reasonable-suspicion legal standard is one that conveys a measure of discretion to the trial judge when applying that standard to a given set of facts.' " *Id.* (quoting *Pena*, 869 P.2d at 939).

## ANALYSIS

 ¶ 6 As a threshold argument, the State asserts that speeding was an alternative ground for the stop. However, the trial court's findings indicate that the only basis for the stop was the windshield sparkle. The trial court specifically stated that "obviously [Trooper] didn't stop him for speeding. That would have been difficult." To challenge the trial court's findings of fact, the challenging party "must first marshal all of the evidence that supports the trial court's findings." *State v. Gamblin*, 2000 UT 44,¶ 17 n. 2, 1 P.3d 1108 (citing *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998)) (emphasis omitted). "After marshaling the supportive evidence, the [challenging party] then must show that, even when viewing the evidence in a light most favorable to the trial court's ruling, the evidence is insufficient to support the trial court's findings." *Id.* (emphasis omitted). "In other words, [the challenging party] must show that the trial court's findings so lack support as to be ' "against the clear weight of the evidence," thus making them "clearly erroneous." ' " *Id.* (quoting *Valcarce*, 961 P.2d at 312 (citations omitted)). The State has not marshaled evidence sufficient to challenge the trial court's finding.[1] Therefore, we examine the stop based solely on the alleged cracked windshield violation.

¶ 7 Defendant was cited for an equipment violation under either section 41–6–117 or section 41–6–155. Both sections concern driving unsafe vehicles.[2] Both parties rely on the state vehicle inspection standards as the basis for the equipment violation.[3] How-

---

1. Even if we were to reach the merits of the State's claim, the trial court's factual finding is not clearly erroneous. Rather it is supported by Trooper's testimony.

 [Defense counsel:] And when you stopped Mr. Galvan, what exactly did you stop him for?

 [Trooper:] I saw a sparkle on the middle portion of the windshield when it hit the light which, through my experience, is usually a cracked windshield.

 [Defense counsel:] Okay. And that's why you stopped him?

 [Trooper:] Yes, sir.

 [Defense counsel:] And not because of the high rate of speed?

 [Trooper:] No.

2. Section 41–6–117(1) states:

 It is a misdemeanor for any person to drive or move ... on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in this chapter or in rules issued by the department....

 Utah Code Ann. § 41–6–117(1) (1998).

 Section 41–6–155 states:

 A person may not drive or move on any highway any motor vehicle ... unless:

 (1) the equipment on each vehicle is in good working order and adjustment as required in this chapter; and

 (2) the vehicle is in safe and good mechanical condition so as:

 (a) not to endanger the driver or other occupant or any person or property upon the highway....

 Utah Code Ann. § 41–6–155 (1998).

3. Initially, we find it troubling that both the State and Defendant assume the administrative regulations for vehicle inspections create a per se proper basis for a traffic stop. Past opinions have assumed that equipment violations were adequate grounds for a stop. *See State v. Lopez*, 873 P.2d 1127, 1140 (Utah 1994) (citing *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979)). However, stops based on equipment violations have been limited to *statutory* equipment violations involving safety issues. *See, e.g., State v. Chevre*, 2000 UT App 6,¶¶ 8–9, 994 P.2d 1278 (upholding stop for defective brake light, which was a violation of Utah Code Ann. §§ 41–6–120, –121.10 (1998)); *State v. Patefield*, 927 P.2d 655, 657–58 (Utah Ct.App. 1996) (upholding stop based on burned-out license plate bulb, which was a violation of Utah Code Ann. § 41–6–120(b)(1993)). We have decided very few cases under the unsafe vehicle statutes at issue in this case. *See, e.g., State v. O'Brien*, 959 P.2d 647, 648–49 (Utah Ct.App. 1998) (upholding stop based on Utah Code Ann. § 41–6–117 to determine whether a safety violation occurred when officer observed defendant driving with wobbly front wheel); *State v. Marshall*, 791 P.2d 880, 883 (Utah Ct.App.1990) (upholding stop based on Utah Code Ann. § 41–6–117 when officer observed that turn signal had been on for two miles since officer believed it could have been on due to safety equipment malfunction). Both of these stops, however, were directly related to the safety of the vehicle, and "[c]ourts consistently have held that a police officer can stop a vehicle when he or she believes the vehicle's safety equipment is not functioning properly." *Marshall*, 791 P.2d at 883. While section 41–6–117 does state that it is a misdemeanor to drive a vehicle with equipment not "in proper condition and adjustment as required in this chapter *or in rules issued by the department*," *id.* (emphasis added), it does not necessarily follow that those "rules" would include vehicle inspection standards not implicating safety. *See Doctor v. State*, 596 So.2d 442, 447 (Fla.1992) (holding statute allowing stops for equipment not in proper repair was limited to "ensuring the

ever, they do not agree as to what the correct standard is.

¶ 8 Defendant argues that Trooper was mistaken as to the law concerning windshield cracks and incorrectly thought a 24 inch crack was illegal when he stopped Defendant. Defendant further argues that .the correct law in Utah is based on the federal standards for commercial vehicles that were adopted by reference in Rule R714–158–10 of the Utah Administrative Code. Defendant argues that the previous standard of 24 inches or more, in former rule R714–158–10, was repealed when the federal standards were adopted. If Defendant is correct, and the federal standards do apply in this case, then the applicable Utah law for windshield cracks would allow "[a]ny crack that is not intersected by any other cracks" and "[a]ny damaged area which can be covered by a disc 19 mm (¾ inch) in diameter if not closer than 76 mm (3 inches) to any other similarly damaged area." 49 C.F.R. § 393.60(c)(2)-(3) (2000).

¶ 9 Defendant bases his conclusion on a mistaken belief that the adoption of the federal standards, now contained in R714–158–10, coincided with the repeal of the specific windshield provisions formerly contained in that rule. However, these provisions coexisted with the detailed windshield provisions until 1998. *See* Utah Admin. Code R714–158–15 (1996) (setting forth federal standards in previous R714–158–15, which is virtually identical to current R714–158–10, in the same rule as the provision for 24 inch windshield cracks).

¶ 10 While it is unclear why the federal standards were adopted into the state's administrative code, we cannot agree with Defendant's conclusion that the federal standards act to create a new standard for windshield cracks in passenger vehicles. We conclude the passenger car standards have been removed from the administrative code and placed in an inspection manual, and are the current standard for windshield cracks. Therefore, we analyze the stop on the presumption that the 24 inch standard is the law in Utah regarding windshield cracks.

¶ 11 The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The right to be free from unreasonable searches and seizures extends to a person's automobile." *State v. Friesen*, 1999 UT App 262,¶ 12, 988 P.2d 7 (citing *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994)). A law enforcement officer may stop a vehicle if the officer has a reasonable suspicion the vehicle is being operated in violation of the law. *See id.*

> The reasonable suspicion necessary for an investigative stop of an automobile must be judged against an objective standard—that is, whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify intrusion into the defendant's personal security.

*Id.* "In determining whether this objective standard has been met, the focus necessarily centers upon the facts known to the officer immediately before the stop." *Id.* "The burden of establishing those articulable facts falls on the State." *State v. Kohl*, 2000 UT 35,¶ 11, 999 P.2d 7.

¶ 12 We thus review the trial court's determination that the officer's observation of a sparkle in the Defendant's windshield created reasonable suspicion of a safety equipment violation sufficient to justify the stop. While this particular fact situation is one of first impression in Utah, other jurisdictions have decided similar cases, including the Tenth Circuit in an unpublished opinion based on Utah law. *See United States v. Vizcarra*, No. 99–4189, 2000 WL 663784, *2–*3, 2000 U.S.App. LEXIS 11561, at *7–*9 (10th Cir. May 22, 2000) (unpublished opinion) (upholding district court finding that officer could see crack in windshield extending more than 24 inches across the windshield and district court conclusion that this observation "[was] sufficient, standing alone, to establish probable cause").

safe condition of vehicles"); *Vicknair v. State,* 751 S.W.2d 180, 189 (Tex.Crim.App.1988) (holding that stop was invalid because cracked tail light did not violate state law, even though it would not pass vehicle inspection standards). We need not reach this issue as we reverse on other grounds and the issue was neither raised nor briefed by either party.

¶ 13 Other jurisdictions have upheld stops based on officer observations of windshield cracks, emphasizing the size of the crack and whether it would be in violation of the law. *See, e.g., United States v. Cashman,* 216 F.3d 582, 587 (7th Cir.2000) (upholding finding of probable cause based on windshield violation when officer saw crack between 7 and 10 inches long and state regulation prohibited windshields cracked "excessively"); *United States v. Smith,* No. 00–3043, 2000 WL 1846202, *2, 2000 U.S.App. LEXIS 32488, at *5 (10th Cir. Dec. 18, 2000) (unpublished opinion) (upholding trial court's finding that officer's glimpse of a windshield crack that ran vertically from bottom to middle of windshield created reasonable suspicion that vehicle was in violation of city ordinance that prohibited cracks that obstructed operator's vision); *State v. Vera,* 196 Ariz. 342, 996 P.2d 1246, 1247 (Ct.App.1999), *review denied* Mar. 9, 2000 (upholding trial court's conclusion that there was reasonable suspicion for the stop when windshield crack extended from driver's side to passenger's side and state statute required "adequate" windshield); *Darby v. State,* 239 Ga.App. 492, 521 S.E.2d 438, 440 (1999) (upholding investigative stop when officer saw a crack over a foot in length in windshield); *State v. Pease,* 531 N.E.2d 1207, 1211 (Ind.Ct.App.1988) (concluding extensive windshield cracks created reasonable suspicion that vehicle was in violation of unsafe vehicle statute); *State v. Goins,* No. 95CA2106, 1996 WL 275084, *2, 1996 Ohio App. LEXIS 2192, at *6–*8 (Ohio Ct.App. May 17, 1996) (unpublished opinion) (affirming denial of motion to suppress when officer stopped vehicle based on observation of a crack "all along the top portion" of windshield because observation created reasonable suspicion of an equipment violation).

¶ 14 At least one court has found that when the crack did not appear to be in violation of law, the stop was not justified. In *People v. Cerda,* 819 P.2d 502 (Colo.1991), the court upheld a trial court's order granting a motion to suppress evidence based on a windshield stop. The state statute prohibited driving a vehicle " 'upon any highway unless the driver's vision through any required glass equipment is normal and unobstructed.' " *Id.* at 503 (quoting Colo.Rev. Stat. § 42–4–201(4) (1984 & Supp.1991)).

The trial court had granted the defendant's motion to suppress, finding there was no reasonable suspicion for the stop, concluding "it was 'very nebulous and unclear as to the type of crack [and] the location of the crack.' " *Id.* (alteration in original). "The [trial] court found that although the officer observed a crack in [the defendant's] windshield, the officer conceded that it did not warrant a ticket. The court stated there was no testimony that the crack obscured the driver's vision." *Id.* This ruling was affirmed on appeal. *See id.; see also State v. Munoz,* 125 N.M. 765, 965 P.2d 349, 353–54 (Ct.App. 1998) (remanding to trial court the question of whether officer's observation of windshield "provided reasonable grounds to believe that the crack in the windshield made the vehicle unsafe to drive").

¶ 15 Reviewing the above cases, we conclude that an officer must have reasonable articulable suspicion that any windshield crack observed is in violation of the law before a stop is justified.

> The propriety of the traffic stop does not depend ... on whether [the defendant] was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. *The pertinent question instead is whether it was reasonable for [the trooper] to believe that the windshield was cracked to an impermissible degree.*

*Cashman,* 216 F.3d at 587 (emphasis added).

¶ 16 We conclude it was not reasonable of Trooper to believe that a windshield crack safety violation occurred based merely on Trooper's observation of a sparkle in the windshield. Since Utah law requires a crack of at least 24 inches for a violation, a sparkle alone is insufficient to create a reasonable suspicion that the windshield was a safety equipment violation. Thus we reverse the trial court's denial of Defendant's motion to suppress.

## CONCLUSION

¶ 17 Trooper stopped Defendant based on his observation of a sparkle in Defendant's windshield. Trooper needed reasonable suspicion that there was a safety equipment

violation in order to conduct a valid stop. A windshield crack must extend at least 24 inches to violate Utah law. We conclude that Trooper did not have reasonable suspicion that a violation occurred based on his observations of a sparkle in the windshield. Defendant's motion to suppress should have been granted. We therefore reverse and remand.

¶ 18 I CONCUR: NORMAN H. JACKSON, Associate Presiding Judge.

¶ 19 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.